Argued and submitted August 30, affirmed November 13, reconsideration denied December 26, 1991, petition for review allowed January 21, 1992 (312 Or 588) Petition for review dismissed March 3, 1992 (313 Or 75)

## STATE OF OREGON,
*Respondent,*

*v.*

## DELBERT L. SPINNEY,
*Appellant.*

### (CM89-0966; CA A64690)

820 P2d 854

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a challenge to the constitutionality of Oregon's Sentencing Guidelines (guidelines).[1] The question is whether the guidelines violate Article I, section 15; Article I, section 16; or Article III, section 1, of the Oregon Constitution.

Defendant was convicted of first degree burglary, ORS 164.225, and second degree kidnapping. ORS 163.225. Under the guidelines, he had a sentencing grid classification of 9-C. The trial court found "no substantial and compelling reasons" to impose a departure sentence. OAR 253-08-001. Pursuant to the guidelines, defendant was sentenced to 56 months in prison.[2] *See* OAR chapter 253, Appendix 1. He assigns error to the trial court's denial of his motion to hold the application of the guidelines unconstitutional under different provisions of the Oregon Constitution.

■ First, defendant points to Article I, section 15, which requires that

> "[l]aws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

Defendant argues that the guidelines are "in hopeless conflict" with that provision, because they state that "[t]he primary objectives of sentencing are *to punish each offender appropriately,* and to insure the security of the people in person and property, within the limits of correctional resources * * *." OAR 253-02-001. (Emphasis supplied.) Defendant contends that punishment, rather than reformation, is the primary objective of the guidelines. He concludes

---

[1] The Sentencing Guidelines, codified in OAR Chapter 253, are applicable to felonies committed after November 1, 1989. ORS 137.010(1); ORS 137.120(2). They contain a sentencing grid with blocks that show "the presumptive sentence for an offender whose crime of conviction and criminal history place him or her in that grid block." OAR 253-04-001(2). Across the top of the sentencing grid are nine categories that reflect progressive stages in a "criminal history scale." Vertically on the left of the grid are 11 categories that progress along a "crime seriousness scale." The intersection of a defendant's criminal history category with the current conviction's seriousness category produces a sentencing range, expressed as the amount of time that the defendant is to be incarcerated or placed on probation. OAR ch 253, div 5.

[2] The range set out in grid block 9-C is 56-60 months of imprisonment. According to OAR 253-05-001, "[t]he sentencing judge should select the center of the range in the usual case and reserve the upper and lower limits for aggravating and mitigating factors insufficient to warrant a departure [sentence]."

that the guidelines are therefore vindictive and prohibited by the Oregon constitution. We disagree.

Several cases have interpreted Article I, section 15. In *Tuel v. Gladden,* 234 Or 1, 379 P2d 553 (1963), the Supreme Court examined the habitual criminal statute, which provided for life imprisonment without the possibility of parole. It held that the statute did not violate Article I, section 15, because

> "[t]he Oregon Constitution does not attempt to state all of the principles to be followed by the legislature in enacting sentencing laws. The constitution does contain sentencing restrictions in addition to [Article I, section 15]. It requires that 'all penalties shall be proportioned to the offenses'; excessive fines shall not be imposed; and cruel and unusual punishments shall not be inflicted. Art I, § 16. The drafters of the constitution, however, did not include the most important consideration of all, the protection and safety of the people of the state. Such a principle does not have to be expressed in the constitution as it is the reason for criminal law." 234 Or at 5-6. (Footnote omitted.)

In *State v. Warner,* 52 Or App 987, 630 P2d 385, *rev den* 291 Or 662 (1981), the defendant made an Article I, section 15, challenge to *former* ORS 161.610, which required that a minimum sentence be imposed on all defendants who use or threaten to use a firearm during the commission of a felony. That statute was upheld because, as in *Tuel,* its purpose was to protect society from the most dangerous criminals, not to obtain revenge or retaliation. "The intent of the law is to insure that society is insulated from such persons, at least for a certain period of time." 52 Or App at 995. *See also State v. Lippert,* 53 Or App 358, 632 P2d 28, *rev den* 291 Or 893 (1981); *Norris v. Cupp,* 67 Or App 393, 678 P2d 756, *rev den* 297 Or 824 (1984).

Like the sentencing statutes that were challenged in *Tuel, Warner, Lippert* and *Norris,* the guidelines are an attempt both to protect society and to deter individuals from engaging in dangerous and repeated criminal conduct. They also seek to apply corrections system resources for the rehabilitation and reformation of offenders, the prevention of recidivism and the promotion of more consistent sentences

among like individuals. OAR 253-02-001(3)(a),(e). The guidelines expressly acknowledge that one of the primary purposes for imposing sentences is to provide punishment that is appropriate to the offense. OAR 253-02-001(1). That does not render them "vindictive" and violative of the constitution. As we noted in *State v. Lippert, supra,* 53 Or App at 362, section 15 "does not prevent the legislature from classifying certain criminal conduct as particularly dangerous and designating heavier penalties for that class of conduct to protect society and deter such conduct in the future." We hold that the guidelines are not prohibited by Article I, section 15.

Defendant next argues that the guidelines are prohibited by Article I, section 16, which provides, in part, that "all penalties shall be proportioned to the offense." He relies on *Cannon v. Gladden,* 203 Or 629, 281 P2d 233 (1955), in which the defendant was indicted for statutory rape but convicted of the lesser included offense of assault with intent to commit rape. A maximum sentence of life imprisonment was imposed. The court concluded that the penalty violated section 16, because it exceeded the 20-year maximum penalty that could have been imposed for the *greater* offense. *See also State v. Shumway,* 291 Or 153, 164, 630 P2d 796 (1981). Although *Cannon* expresses the principle that a statute cannot impose a harsher sentence for a lesser included offense than for a greater offense of the same kind, *State v. Turner,* 296 Or 451, 456, 676 P2d 873 (1984), it is not dispositive of whether the guidelines unconstitutionally institutionalize disproportionality.

■ Under the guidelines, a repeat offender who is convicted of a lesser felony may be subject to a more severe sanction than a person convicted for the first time of a greater felony. However, that fact *alone* does not determine whether the penalty is disproportionate to the offense. It is permissible for the legislature to provide greater minimum sentences for crimes that are considered most dangerous to the public. *State v. Oslund,* 71 Or App 701, 693 P2d 1354, *rev den* 299 Or 37 (1985). It is equally permissible to provide longer sentences for those *offenders* who are more dangerous to society by virtue of the type and frequency of criminal conduct in which they engage. *See, e.g., Tuel v. Gladden, supra,* 234 Or at 6. Under the guidelines' sentencing grid, progressively

longer periods of incarceration are reserved, in incremental fashion, for the more serious crimes and for the most recidivist offenders. Criminal history and crime seriousness are among the factors that have historically been taken into consideration when determining the appropriate sentence; they are essential to imposing a sentence that is proportioned to the offense and the offender. That is precisely what Article I, section 16, requires.

■ Finally, defendant urges that the guidelines violate the constitutional requirement that the three branches of government exercise separate powers. Article III, section 1, of the Oregon Constitution provides:

> "The powers of the Government shall be divided into three seperate [*sic*] departments * * * and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Defendant argues that, in establishing sentencing guidelines, the legislative branch has usurped the power of the judiciary. We disagree.

■ The legislative branch is prohibited from unduly burdening or interfering with the exercise of judicial functions, *State ex rel Bushman v. Vandenberg*, 203 Or 326, 280 P2d 344 (1955), but a legislative determination that a certain sentence must be imposed on a convicted individual does not violate the separation of powers requirement. *State v. Earls*, 69 Or App 75, 683 P2d 1387, *rev den* 297 Or 824 (1984). It is within the legislature's power to establish criminal penalties, whether mandatory minimum sentences or a range of possible sentences. That does not impair or destroy the power of the judiciary to adjudicate, pronounce a judgment or carry it into effect.

Judicial discretion may be exercised by giving due weight and consideration to the mitigating and aggravating factors of each individual case. A judge may then impose a sentence at the highest or lowest ends of the range that is provided in the sentencing grid blocks, OAR 253-05-001, or may impose a departure sentence. OAR 253-02-001(3)(d);

OAR 253-08-001. We hold that the guidelines do not violate Article III, section 1.[3]

Affirmed.

---

[3] We note that the federal sentencing guidelines have similarly withstood separation of powers challenges. *Mistretta v. United States,* 488 US 361, 109 S Ct 647, 102 L Ed 2d 714 (1989); *United States v. Belgard,* 894 F2d 1092 (9th Cir 1990).