Argued and submitted August 30, 1991, taken In Banc and resubmitted April 15, reconsideration denied September 16, petition for review denied October 27, 1992
(314 Or 574)

STATE OF OREGON,
*Respondent,*

*v.*

RICHARD C. RICE,
aka Schmidt,
*Appellant.*

(90-20074; CA A65744 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

RICHARD C. RICE,
aka Schmidt,
wtn Cary Bruce Schmierer,
*Appellant.*

(90-20111; CA A65745)

STATE OF OREGON,
*Respondent,*

*v.*

RICHARD RICE,
aka Schmidt,
*Appellant.*

(90-20112; CA A65746)

STATE OF OREGON,
*Respondent,*

*v.*

RICHARD C. RICE,
aka Schmidt,
wtn Cary Bruce Schmierer,
*Appellant.*

(90-20137; CA A65747)
(Cases Consolidated)

836 P2d 731

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Carol J. Fredrick, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

ROSSMAN, J.

De Muniz, J., dissenting.

## ROSSMAN, J.

Defendant pled guilty to seven counts of negotiating a bad check, a Class A misdemeanor. ORS 165.065.[1] The checks were negotiated in December, 1989, for a total amount of $814.88. On each conviction, he was sentenced to 90 days in the county jail, with the sentences to be served consecutively. Because defendant pled guilty, our review is limited to whether his sentences exceed the maximum authorized by law or constitute cruel and unusual punishment. ORS 138.050(1).

Defendant argues that the sentences both individually and cumulatively violate the constitutional requirement of proportionality.[2] He contends that each of the 90-day sentences and the total of 630 days for his misdemeanor convictions far exceed what could have been imposed under the felony sentencing guidelines, had he been convicted of, *e.g.*, theft in the first degree, a Class C felony. ORS 164.055(3).[3] His argument results from the 1989 enactments that require sentences for felonies to be imposed in accordance with sentencing guidelines. Or Laws 1989, ch 790, § 87; ORS 137.669; ORS 137.010(1). At this time, no comparable legislation applies to sentencing for misdemeanor convictions.

---

[1] ORS 165.065 provides, in part:

"(1) A person commits the crime of negotiating a bad check if the person makes, draws or utters a check * * * for the payment of money, knowing that it will not be honored by the drawee.

"* * * * *

"(3) Negotiating a bad check is:

"(a) A Class A misdemeanor, except as provided in paragraph (b) of this subsection.

"(b) Enhanced from a Class A misdemeanor to a Class C felony if at the time of sentencing it is established beyond a reasonable doubt that the person has been convicted in this state, within the preceding five years, of the crime of negotiating a bad check or of theft by deception by means of a bad check."

[2] Article I, section 16, of the Oregon Constitution, provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

[3] Theft by deception can involve, among other things, creating certain false impressions or promising performance that one does not intend to deliver; it can be committed by means of a bad check. ORS 164.085(1)(a), (e), (4). First degree theft by deception involves a total property value of $500 or more. ORS 164.055(1)(a).

In the guidelines grid, felonies are classified according to severity and placed along the vertical axis. The criminal history of the offender is represented on the horizontal axis. OAR 253-04-001(1). The block formed by the intersection of the two establishes the mandatory and presumptively correct sentence. OAR 253-03-001(16); ORS 137.669. The guidelines grid is also divided by a "dispositional line." OAR 253-03-001(7). For a defendant whose offense and criminal history intersect within a grid block that is above the dispositional line, the mandatory presumptive sentence is a term of imprisonment. OAR 253-05-001. For a defendant who falls below the dispositional line, the mandatory presumptive sentence is "a term of probation which may include custody and conditions of supervision," unless the offense has a statutorily mandated sentence. OAR 253-05-007(1). Custody may consist of supervision in a correctional facility or a "custody program." OAR 253-05-011; OAR 253-05-012. Thus, for felonies below the dispositional line, the mandatory sentence is probation; any term of incarceration is a result of exercise of the court's discretion.

For misdemeanors, on the other hand, the legislature has generally refrained from establishing mandatory sentences of *any* type. The most notable exception to that rule is DUII. *See* ORS 813.020(2); *State v. Oary*, 109 Or App 580, 820 P2d 857 (1991), *mod* 112 Or App 296, 829 P2d 90 (1992).[4] For most misdemeanors, the sentence is entirely a matter of trial court discretion. The court may discharge the defendant without any condition. ORS 137.010(7)(d). It may conclude that it is in the best interests of the public to suspend the imposition of a sentence or to impose a sentence but not require its execution. ORS 137.010(3). It may place the defendant on probation. ORS 137.010(4). It may sentence the defendant to serve a term of incarceration, to pay a fine or to do both. ORS 137.010(7)(a)-(c). If the trial court determines that incarceration is warranted, the sentence cannot exceed certain maximum limitations that the legislature has established.[5]

---

[4] Defendant's sentences were not imposed under any statutorily mandated provision. We express no opinion as to the proportionality of sentences imposed under those provisions.

[5] ORS 161.615 and Oregon Laws 1989, chapter 790, section 51, as amended by Oregon Laws 1991, chapter 830, section 9, define the maximum terms of incarcera-

In sum, incarceration for felonies below the guidelines' dispositional line is not required; it is always a discretionary determination by the sentencing court, either as part of the probationary sentence or by departure. OAR 253-05-007(1); OAR 253-05-013(3); OAR 253-08-006(2); OAR 253-08-005. The presumptive sentence is one of probation. Thus, we are faced with a sentencing scheme that allows incarceration for misdemeanors while requiring only probation for some felony crimes.

■ It is fundamental that the legislature may classify criminal conduct in different ways and designate different penalties. *See Brown v. Multnomah County District Ct.*, 280 Or 95, 570 P2d 52 (1977); *State v. Spinney*, 109 Or App 573, 577, 820 P2d 854 (1991), *rev dismissed* 312 Or 588 (1992). That legislative power is circumscribed by the constitutional requirement of proportionality. In *Cannon v. Gladden*, 203 Or 629, 281 P2d 233 (1955), the court held that a sentence of life imprisonment for assault with intent to commit rape was unconstitutionally disproportionate, because it was greater than the 20-year maximum sentence that could be imposed for an accomplished rape. In *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981), the defendant was convicted of murder, sentenced to life imprisonment and required to serve 25 years before becoming eligible for parole. Had he been convicted of *aggravated* murder, he would have been required to serve only 15 or 20 years before becoming eligible for parole. The court held that a statutory scheme under which a defendant must serve a longer sentence for the less serious crime than he would be required to serve for the more serious crime violates the constitution's requirement of proportionality. 291 Or at 164. In *State v. Turner*, 296 Or 451, 676 P2d 873 (1984), the court upheld a statute challenged as disproportionate, because it concluded that life imprisonment for murder was more onerous than the challenged 15-year minimum sentence for attempted rape.

■ Each of the Article I, section 16, proportionality determinations made in *Cannon, Shumway* and *Turner* was based on whether a statute required greater sentences for

---

tion for Class A, Class B and Class C misdemeanors. The 1991 enactment, which is repealed on November 1, 1993, limits the maximum term of incarceration for a misdemeanor to six months unless substantial and compelling reasons are found.

lesser offenses; they did not turn on whether the defendants *might* under some circumstances spend more time in jail for a lesser offense than for a greater offense. Here, presented with a scheme under which the imposition of *any* sentence for defendant's misdemeanor offenses is discretionary, and the the imposition of a sentence of probation for lesser felonies is mandatory,[6] we hold that the existence of felony sentencing guidelines does not render disproportionate a misdemeanant's sentence of incarceration.[7]

◼    We turn to the question of whether defendant's sentences constitute cruel and unusual punishment. On December 5, 13, 21 & 31, 1989, he negotiated a total of seven checks that he knew would not be honored. He pled guilty, and a 90-day sentence was imposed for each of the bounced checks. The record before the sentencing judge showed that, since 1973, defendant has exhibited a pattern of committing check-related offenses in which he uses aliases, invalid addresses, different Social Security numbers and different dates of birth. He has repeatedly written checks on closed accounts, is wanted elsewhere on check-related charges and has several out-of-state convictions for similar offenses.

A 90-day sentence is well within the maximum authorized by ORS 161.545 and, under these circumstances, is not "so disproportionate to the offense as to shock the conscience" of fair-minded individuals. *State v. Ronniger*, 7 Or App 447, 461, 492 P2d 298 (1971); *see also Cannon v. Gladden, supra*, 203 Or at 632. Defendant does not challenge the trial court's authority to require that the sentences run consecutively. *See* ORS 137.123(2).

Affirmed.

---

[6] We note that probation is but one of the consequences of a felony conviction. The sequella of such a conviction include enhancement of future penalties for subsequent felony convictions, restriction of one's possession of weapons, ORS 166.270, and, with limited exceptions, an inability to set aside the conviction. ORS 137.225(5). Although defendant in the present case argues that a misdemeanor conviction with a sentence of 90 days in jail is more onerous than a year of probation for a felony offense, reasonable minds differ as to what is "more onerous." Within some limits, that is a policy decision that can and has been made by the legislature.

[7] Although the dissent does not address the ramifications of its holding, it is clear that, by applying its own reasoning, it would have to conclude that *no* term of incarceration for misdemeanors is constitutional, *including* jail time that is imposed as a condition of probation.

**De MUNIZ, J.,** dissenting.

The majority recognizes that the legislature's power to classify criminal conduct in different ways and to designate different penalties is circumscribed by the constitutional requirement of proportionality. It then ignores that constitutional mandate by deciding that, because a court can decide not to impose incarceration for a misdemeanor, there is no proportionality problem. A court's discretion to impose a sentence within a statutory range does not alter the fact that the ranges here provide for greater penalties for lesser offenses. That result is contrary to the constitution.

The 1971 criminal code classified and graded offenses.[1] The criterion by which it designated the relative seriousness of crimes is the term of incarceration, which, for both felonies and misdemeanors, is intended to increase with the severity of the crime. ORS 161.525 provides:

> "Except as provided in ORS 161.585 and 161.705, a crime is a felony if it is so designated in any statute of this state or if a person convicted under a statute of this state may be sentenced to a maximum term of imprisonment of more than one year."

ORS 161.545 provides:

> "A crime is a misdemeanor if it is so designated in any statute of this state or if a person convicted thereof may be sentenced to a maximum term of imprisonment of not more than one year."[2]

The effect of the 1989 guidelines legislation was to return sentencing for felonies to the pre-1971 practice of providing a separate and distinct penalty for each offense. The statutory range for felony convictions, although not repealed, has been

---

[1] ORS 161.025(1) provides that the purposes underlying the criminal code include, among others:

> "(e) To differentiate on reasonable grounds between serious and minor offenses.

> "(f) To prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders.

> "(g) To safeguard offenders against excessive, disproportionate or arbitrary punishment."

[2] ORS 161.605 defines the maximum prison term for each class of felony.

rendered largely academic. *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dismissed* 312 Or 76, 815 P2d 201 (1991).

The term "presumptive sentence" first entered Oregon law in the legislation directing the Oregon Criminal Justice Council to establish guidelines. Or Laws 1987, ch 619. *See Oregon Sentencing Guidelines Implementation Manual* 6 (1989). That legislation indicates that a "presumptive sentence" is not necessarily a term of incarceration. Section 2 provides, in part:

> "The council shall design the guidelines to control commitment to state and local correctional facilities, the term or range of confinement, the requirement and duration of parole, the *imposition and duration of probation subject to condition* and the revocation of probation and subsequent incarceration." (Emphasis supplied.)

Section 5 provides, in part:

> "The guidelines adopted by the State Sentencing Guidelines Board * * * shall control the sentences for all crimes committed after the effective date of such guidelines. * * * [T]he incarcerative guidelines and *any other guidelines* so designated by the board shall be mandatory and *constitute presumptive sentences.*" (Emphasis supplied.)

In accordance with those directions, OAR 253-02-001(3)(c) states, as one of the principles underlying the system:

> "Under sentencing guidelines the response to many crimes will be state imprisonment. Other crimes will be punished by local penalties and restrictions imposed *as part of probation.*" (Emphasis supplied.)

Accordingly, the guidelines grid is divided by a "dispositional line." OAR 253-03-001(7). For an offense in a grid block above the dispositional line, the presumptive sentence "*shall* be a term of imprisonment." OAR 253-05-001. (Emphasis supplied.) For one below the dispositional line, the presumptive sentence "*shall* be a term of probation which *may* include custody and conditions of supervision," unless the offense has a statutorily mandated sentence. OAR 253-05-007(1). (Emphasis supplied.) Custody may consist of supervision in a correctional facility or as part of a "custody program." OAR

253-05-011; OAR 253-05-012. Consequently, the presumptive sentence for some *felonies* is probation.[3]

Under the guidelines scheme, in imposing any felony sentence, the sentencing court must "presume" that the presumptive sentence fulfills the purposes of the guidelines. *See State v. Wilson*, 111 Or App 147, 826 P2d 1010 (1992). For felonies below the dispositional line, that means that the legislature has determined that the appropriate sanction is probation. Incarceration, whether within the range of the grid block or by departure, is a result of an exercise of the court's discretion.

For all misdemeanors, on the other hand, the legislature has determined that incarceration is the appropriate sanction. ORS 161.615 provides, in part:

"Sentences for misdemeanors shall be for a definite term. The court shall fix the term of imprisonment within the following maximum limitations * * *."

Under the misdemeanor sentencing scheme, an incarceration term within the maximums may be suspended and *probation* imposed in the exercise of the court's discretion. ORS 137.010(4). That procedure is the opposite of the one dictated under the guidelines for felonies.

The majority recognizes that the proportionality determinations made in *Cannon v. Gladden*, 203 Or 629, 281 P2d 233 (1955), *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981), and *State v. Turner*, 296 Or 451, 676 P2d 873 (1984), were "based on whether a statute required greater sentences

---

[3] Before the guidelines, probation was not a sentence. *State v. Carmickle*, 307 Or 1, 762 P2d 290 (1988). The guidelines did not change that for pre-guidelines dispositions. *State v. Munro*, 109 Or App 188, 818 P2d 971, *rev den* 312 Or 588 (1991). For crimes committed after November 1, 1989, the guidelines expanded the term "sentence" to include probation. The term "probation sentence" is used in the rules. *See, e.g,* OAR 253-05-007. ORS 137.010(1) now provides:

"The statutes that define offenses impose a duty upon the court having jurisdiction to pass sentence in accordance with this section or, for felonies committed on or after November 1, 1989, in accordance with rules of the State Sentencing Guidelines Board unless otherwise specifically provided by law."

ORS 137.010(4) now provides, in part:

"If the court suspends the imposition or execution of sentence for an offense *other than a felony committed on or after November 1, 1989, the court may also place the defendant on probation* for a definite or indefinite period of not more than five years." (Emphasis supplied.)

for lesser offenses * * *." 114 Or App at 106-07. Inexplicably, it fails to recognize that that is what the two sentencing schemes do here. The test for proportionality under Article I, section 16, is the legislatively enacted term of imprisonment. *Cannon, Shumway* and *Turner* all considered proportionality challenges to penalties for graduated crimes. That is precisely the nature of defendant's challenge here.

The *possibility* of incarceration for felonies below the dispositional line in the guidelines is a speculative matter.[4] Incarceration for those felonies is a discretionary determination by the sentencing court, either as part of a probationary sentence or by departure. OAR 253-05-007(1); OAR 253-05-013(3); OAR 253-08-006; OAR 253-08-005. Although the legislature authorized that discretion under the statutory scheme, the presumption is that incarceration will *not* be imposed. A sentencing system that creates a presumption against incarceration for some felonies, but has no comparable presumption for less serious misdemeanors, creates disproportionate sentences.

Richardson, Buttler and Durham, JJ., join in this dissent.

---

[4] Even accepting the available jail units as the measuring term, defendant's 90-day sentences on the individual misdemeanors are disproportionate. The least serious felonies — analogous to the property misdemeanors for which defendant was convicted — have a maximum jail term of 30 days. Using 30 days incarceration as a measure against which to calculate defendant's consecutive terms, I have been unable to postulate any scenario in which he would have served more than 120 consecutive days as part of multiple sentences for comparable felonies. *See* OAR 253-12-020; OAR 253-08-007. The discrepancy between the limited incarceration that can be imposed for comparable felonies and defendant's consecutive sentences here of 630 days incarceration shocks the conscience. *See Cannon v. Gladden, supra*, 203 Or at 632.