Argued February 6, reversed March 20, 1963

## TUEL *v.* GLADDEN
379 P. 2d 553

[ 1 ]

*C. L. Marsters,* Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were Robert Y. Thornton, Attorney General, and Harold W. Adams, Assistant Attorney General, Salem.

*Merlin Estep,* Salem, argued the cause and filed a brief for respondent and cross-appellant.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

## DENECKE, J.

A 1929 conviction and sentence is the genesis of this post-conviction proceeding. In that year defendant was convicted of burglary not in a dwelling. Upon a showing of three prior felony convictions, he was sentenced to life imprisonment under the Habitual Criminal Act then in effect.

The defendant has been the subject of action by officials of the state of Oregon many times since then; not, however, by its courts. In 1940 Governor Sprague conditionally commuted his sentence. Governor Snell revoked this conditional commutation in 1944 upon a finding that he had violated the terms of his commutation. In 1954 Governor Patterson commuted his sentence to 40 years and thereby made him eligible for parole. In the same year the Chairman of the Parole Board revoked his parole because he had violated the terms of his parole.

Thirty years after his conviction the defendant petitioned for a writ of habeas corpus. The lapse of 30 years is no bar to relief if it is otherwise in order. The petition was amended and became a petition for post-conviction relief. The trial court concluded that

the sentence ordered in 1929 was invalid. The basis for its holding was that the habitual criminal statute in effect in 1929 was contrary to Art I, § 15, of the Oregon Constitution. This section of the Bill of Rights declares:

> "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

The Warden contends that the petitioner is now in no position to urge that his life sentence with no parole was void because such sentence had been commuted to 40 years with the possibility of parole. That issue is not here resolved. We prefer to decide the case upon the same issue that the trial court did.

In *State v. Hicks,* 213 Or 619, 325 P2d 794, cert den 359 US 917, 79 S Ct 594, 3 L ed2d 579, the Habitual Criminal Act, enacted in 1947 (Oregon Laws 1947, ch 585, p 1101), was attacked. There, the defendant was also convicted of burglary not in a dwelling, as here. He was then charged as a habitual criminal, admitted two prior felony convictions, and was sentenced to 10 years. He could have been paroled at any time the Board of Parole determined him to be fit for parole. This court specifically held, with little comment, that the 1947 Habitual Criminal Act did not violate this section of the Oregon Bill of Rights.

Inasmuch as the penalty here was so much more severe, life imprisonment with no parole, and the trial court, experienced in post-conviction proceedings, held the act unconstitutional, we will further examine this portion of the Bill of Rights.

Our constitutional provision was substantially copied from Indiana. *State v. Finch,* 54 Or 482, 498, 103 P 505. *State v. Finch,* supra, held the imposition of the death penalty did not violate this constitutional

provision. The court partly relied upon an Indiana decision that this provision of the Indiana Constitution from which the Oregon provision was patterned did not prohibit the death penalty.① *Kelley v. State,* 204 Ind 612, 185 NE 453, held that this provision of the Indiana Constitution did not invalidate the Indiana Habitual Criminal Act. That case involved a principal conviction of check forgery and a life sentence as a habitual criminal. No such constitutional provision has been found in any other state.

Reformation means doing over to bring about a better result, correction, or rectification. Vindictive, on the other hand, is defined by words such as "revenge," "retaliate," or "punishment." The best known law applying vindictive justice is *lex talionis*: "An eye for an eye, and a tooth for a tooth." Matthew 5:38.

It has been suggested that life confinement is not inconsistent with reformation, i.e., the person might be reformed, but, nevertheless, his confinement would be continued. That view, we believe, is contrary to an implied essential corollary of reformation, that permanent reformation should be followed by release from confinement.

■ It is held, however, that the Habitual Criminal Act and the life confinement thereunder is not contrary to Art I, § 15, of the Oregon Bill of Rights. The Oregon Constitution does not attempt to state all of the principles to be followed by the legislature in enacting sentencing laws. The constitution does contain sentencing restrictions in addition to the above quoted. It requires that "all penalties shall be proportioned to the offenses"; excessive fines shall not be imposed;

---

①The death penalty was provided by statute at the time of State v. Finch, supra, rather than by constitution, as it now is.

and cruel and unusual punishments shall not be inflicted. Art I, § 16. The drafters of the constitution, however, did not include the most important consideration of all, the protection and safety of the people of the state. Such a principle does not have to be expressed in the constitution as it is the reason for criminal law. All jurisdictions recognize its overriding importance.[2]

■ We interpret Art I, § 15, of the Oregon Bill of Rights to command and require that Oregon sentencing laws have as their object reformation and not retaliation, but they do not require that reformation be sought at substantial risk to the people of the state.

Habitual criminal acts are based upon the belief that the criminal, as well as the crime, is a material factor to be considered in fixing the sentence. If the criminal is a menace to the community, his sentence should be aimed at offering the most protection to the community, regardless of the relative innocuousness of the particular crime for which he is now convicted. Habitual criminal acts take into account the accepted fact that one who has previously committed felonies is more likely to commit them again upon release from confinement. One with a previous felony record is more likely to be a danger to the community even though his present crime is relatively petty.[3]

---

[2] "The main object of all punishment is the protection of society." Driskill v. State, 7 Ind 338, as quoted in State v. Finch, supra, at 498. "Ultimately the justification of all sentencing is the protection of society." Judge William J. Campbell, Developing Systematic Sentencing Procedures, Federal Probation, Sept 1954, at p 3.

[3] "This legislation [habitual criminal] has been widely enacted to remove from society a class of confirmed criminals whose depredations have proven to be limited only by their opportunities." State ex rel Grandstaff v. Gore, 182 Tenn 94, 102, 184 SW2d 366.

Coupled with this necessity for protecting society is the knowledge that it is difficult to determine whether or not a person has really reformed and how permanent this reformation is. The petitioner's history is an example of this difficulty. Twice he was thought to be reformed to the extent that he could be released from confinement; and twice it was found that such a conclusion was erroneous.

The motive of the legislature in enacting the Habitual Criminal Act here attacked could be found to be as follows:

■ Providing for a mandatory life sentence is not to attain revenge or retaliation. However, the odds of true and permanent reformation of one who has already committed four felonies are so outweighed by the odds that a four-time repeater will continue to be a menace to a community if he is released from his confinement that the obligation to protect the people of this state justifies the passage of a compulsory life sentence for a four-time felon.[4]

④ There is substantial disagreement today that habitual criminal acts do afford more adequate protection to the community. "* * * This is because their [habitual criminal acts] operation depends upon the prosecution's showing of prior convictions and prosecutors have proved more inclined to use the law as a means of bargaining for pleas than to secure a life sentence or a very long term. As a result hardened criminals may profit from the recidivist legislation where they can effect a favorable transaction for a plea. In response to an inquiry conducted by the author, attorneys general in the United States pointed to the general circumvention of the laws and the resultant nullification of their deterrent value. One commentator has observed, 'Certainly the extent of judicial intransigency [these laws] have incurred points up a need for legislative reexamination not only of present enforcement procedures, but of the entire orientation of existent recidivist legislation.'

"It is interesting to observe that in foreign countries where recidivist legislation has also very commonly been established their experience is essentially similar to that in the United States. * * *" Paul W. Tappan, Crime, Justice and Correction (1960), at 472–473.

The statute and the sentence thereunder is consistent with Art I, § 15, of the Oregon Constitution.

The petitioner has cross-appealed and assigned as errors the trial court's conclusions of law that the other grounds alleged as a basis for post-conviction relief were not well taken.

■ His first assignment is that the 1929 information did not state facts sufficient to constitute a crime. This is not a ground for post-conviction relief. *State v. Cloran*, 233 Or 400, 378 P2d 961.

Petitioner contends that the judgment of conviction was "illegal" in that no information charging the petitioner with being previously convicted of three felonies was filed *subsequent* to his conviction or sentencing for the principal crime.

■ The district attorney charged the defendant by an information, on waiver of indictment. The information charged the principal crime, and also charged the defendant with having committed three previous felonies; the felonies were detailed. After the defendant had pleaded guilty to the principal crime the matter of the past felony convictions was taken up. The defendant admitted that he had been convicted of these three felonies, whereupon, the court sentenced him.

It is not contended that this procedure deprived the defendant of his constitutional rights or deprived the court of jurisdiction. The only ground complained of is that the procedure required by statute was not followed. The statute required that at any time *after* sentence or conviction if it appeared that the defendant had previously been convicted of felonies, the district attorney was to file an information charging the defendant with committing such felonies. Oregon Laws 1927, ch 334, § 4, p 432. This portion of the statute, obviously, was not followed. The informa-

tion was made prior to the conviction and sentencing. However, the hearing and sentencing as a habitual criminal was held after the conviction.

██ Failure to comply with a criminal procedural statute is not a ground for post-conviction relief unless it creates a condition which is specified as a ground for post-conviction relief, such as a denial of constitutional rights. ORS 138.530. This failure to proceed in accordance with the statute is classified as an error of law or irregularity of practice which cannot be collaterally attacked. See cases cited in *Smallman v. Gladden,* 206 Or 262, 270, 291 P2d 749.

█ Petitioner assigns as further error that the habitual criminal statute violates that provision of the Oregon Constitution requiring that all penalties be proportioned to the offense. Art I, § 16. *State v. Hicks,* supra, and *State v. Smith,* 128 Or 515, 525-526, 273 P 323, specifically held to the contrary.

*State v. Hicks,* supra, also held contrary to the petitioner's contention that the Habitual Criminal Act was contrary to the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.[9] The facts urged there to support the contention of unconstitutionality were different than those apparently urged here, but the conclusion is the same.

Reversed.

---

[9] Numerous cases holding habitual criminal acts constitutional are collected at 24B CJS 438, Criminal Law § 1959.