Argued and submitted March 8, peremptory writ to issue September 27, 1983

STATE ex rel O'LEARY,
*Plaintiff-Relator,*

*v.*

JACOBS,
*Defendant.*

(SC 28953)

669 P2d 1128

Thomas H. Denney, Assistant Attorney General, argued the cause for plaintiff-relator. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

John Henry Hingson III, Oregon City, argued the cause and filed briefs for defendant.

Before Lent, Chief Justice,* and Peterson,** Campbell, Roberts, Carson and Jones, Justices.

LENT, J.

* Chief Justice when this case was argued.
** Chief Justice when this decision was rendered.

### LENT, J.

At issue is the extent of a circuit court judge's sentencing authority under ORS 137.010(4), which reads as follows:

> "The power of the judge of any court to suspend execution of sentence or to grant probation to any person convicted of a crime shall continue until the person is delivered to the custody of the Corrections Division."

Specifically, does the above-quoted statute prevent a circuit court judge from ordering probation for a convicted felon who, after sentencing, obtained release from the state penitentiary during the pendency of his appeal, and who was before the judge for recommitment after exhausting his appeal rights? This issue is subtended to the question of whether such a convict has been "delivered" to the Corrections Division for the purposes of the statute before being released on security deposit.

■■ We hold that under ORS 137.010(4) a trial judge's power to modify sentence ends once the convict has been placed in the custody of the Corrections Division pursuant to a valid sentence without taking an appeal and electing a stay of execution of sentence. The convict in this case was surrendered to the Corrections Division under a lawful sentence before he appealed and elected a stay. The trial judge, therefore, had no authority thereafter to order probation.

Michael Edward Blake was convicted of sodomy and rape. The trial court sentenced him to a prison term not to exceed five years in the state penitentiary. Under this sentence Blake was imprisoned in the state penitentiary, but he was released pursuant to ORS 138.135(1) a few days after beginning to serve his sentence upon filing an appeal and posting a security deposit. ORS 138.135(1) reads as follows:

> "A sentence of confinement shall be stayed if an appeal is taken and the defendant elects not to commence service of the sentence or is admitted to bail. If a defendant is not admitted to bail and elects not to commence service of the sentence pending appeal, he shall be held in custody at the institution designated in the judgment without execution of sentence, except as provided in ORS 138.145."

Under the above-quoted statute, an appeal may function as a stay of sentence for the duration of the appeal at the election of the prisoner.

Two years later Blake exhausted his appeal rights when this court, after allowing his petition for review, dismissed the proceeding. *State v. Blake,* 292 Or 486, 640 P2d 605 (1982). Upon Blake's surrender to the circuit court for recommitment to the state penitentiary, he moved for reconsideration of his sentence. We know of no statute authorizing a motion and hearing for this purpose. The defendant judge, however, found that Blake had rehabilitated himself. He suspended Blake's sentence and put Blake on probation for five years.

The state moved for a reconsideration of the order of probation on the ground that ORS 137.010(4) withheld from the court the legal authority to grant Blake's probation. The motion was denied. We allowed the state's petition for an alternative writ of mandamus to compel the defendant to vacate the order of probation and to issue an order in lieu thereof that the remainder of the sentence originally imposed be executed.

Defendant judge argues that Blake's appeal was a stay of sentence under ORS 138.135(1) which operated nunc pro tunc to void delivery to the custody of the Corrections Division and that, therefore, the court retained authority to grant probation. Defendant goes on to contend that his interpretation of the authority granted him under ORS 137.010(4) has a special constitutional force in the circumstances of this case.

Blake was indigent. Defendant argues that but for Blake's financial inability to immediately make his security deposit and file an appeal he would have remained within the sentencing authority of the circuit court even under the plaintiff's interpretation of ORS 137.010(4). The defendant contends that any application of ORS 137.010(4) which places Blake outside the circuit court's sentencing authority is a denial of equal protection under the Oregon and federal constitutions.[1]

---

[1] Defendant relies upon Article I, Section 20 of the Oregon Constitution, which states that:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Furthermore, defendant submits that Blake has reformed and that to interpret ORS 137.010(4) in such a way as to deny the court's power to modify Blake's sentence in the light of his rehabilitation would violate Article I, Section 15 of the Oregon Constitution, pronouncing reformation to be the object of law for the "punishment" of crime and prohibiting laws based on principles of vindictive justice; Article I, Section 13 of the Oregon Constitution, prohibiting unnecessarily rigorous treatment of prison inmates; and the Oregon and federal constitutional prohibitions against cruel and unusual punishment (Article I, Section 16 of the Oregon Constitution and Amendment VIII of the United States Constitution).

The starting point for our analysis is a recognition that under a well established majority common law rule which was followed in Oregon before ORS 137.010(4) was enacted, a trial judge's power to modify or vacate a valid sentence ends once the sentence has been executed. *State v. Leathers,* 271 Or 236, 240, 531 P2d 901 (1975); *State v. Cannon,* 11 Or 312, 2 P 191 (1884); *Ex parte Lange,* 19 Wall 163, 21 LEd 872 (1874); *Oxman v. US,* 148 F2d 750 (8th Cir 1945); *People v. Clinton,* 243 Cal App 2d 284, 52 Cal Rptr 221 (1966). The crucial term here is "execution of sentence." Under the common law rule, execution of sentence means putting the sentence into effect. *State v. Cannon, supra,* 11 Or at 314.

■　　ORS 137.010(4) is consistent with the common law rule. For the purposes of the statute, delivery to the Corrections Division of a convicted person under a valid sentence without his taking an appeal and electing a stay is "execution of the sentence." The correlation between execution of sentence and delivery to the Corrections Division is reflected in the statutory scheme governing procedure in criminal matters. The statute describing the delivery procedure, ORS 137.320(1),[2] is found in a set of code sections, ORS 137.310 to 137.370, concerned with execution of judgments.

---

and upon Amendment XIV, Section 1 of the United States Constitution, which states in part:

"No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws."

[2] ORS 137.320(1) states:

Under ORS 137.320(1) "delivery" of the defendant to the Corrections Division simply means that the sheriff brings the defendant with a copy of the judgment and a statement of the number of days that the defendant was imprisoned prior to "delivery" to the superintendent of the correctional or penal institution to which the defendant is initially assigned. Blake was so delivered. His sentence was, therefore, executed, and he was thus within the purview of ORS 137.010(4). The only questions remaining are (1) whether this is a constitutional violation in the circumstances of this case, and (2) whether the election of a stay of execution has a retroactive effect.

We decline to accept defendant's constitutional justifications for excluding from the class of those who have been delivered to the Corrections Division to serve sentences those who have begun their prison terms but who have been released on security deposit pending appeal. The gist of the defendant's equal protection argument under federal law is that ORS 137.010(4) should not be enforced in such a way as to impermissibly discriminate against indigents. Under the Oregon Constitution, the essence of defendant's argument is that the law as applied by the state grants a privilege to those with sufficient wealth and denies that privilege to the poor.[3]

Although defendant does not directly argue the point, we surmise that the "privilege" or "protection" interest asserted by the defendant is based upon the notion that remaining within the sentencing authority of the trial court judge is an incident of due process. Under this characterization, one who can afford to avoid delivery to the Corrections Division receives more process by remaining within the sentencing authority of the trial judge than one who cannot make security deposit.

Defendant's position, however, is based upon an inaccurate interpretation of the statutory scheme. When ORS

"When a judgment includes commitment to the legal and physical custody of the Corrections Division, the sheriff shall deliver the defendant, together with a copy of the entry of judgment and a statement signed by the sheriff of the number of days the defendant was imprisoned prior to delivery, to the superintendent of the penal or correctional institution to which the defendant is initially assigned pursuant to ORS 137.124."

[3] See Linde, "Without Due Process," 49 Or L Rev 125, 140 (1970), on the difference between equal protection under the Oregon Constitution and the United States Constitution.

137.010(4) is read in the light of ORS 138.135(1), it is clear under the plain terms of ORS 138.135(1) that the opportunity to remain within the sentencing power of the trial court depends not on any implicit or explicit classification according to financial status, but upon the mere filing of an appeal and an election to have the appeal serve as a stay of sentence. The pertinent part of ORS 138.135(1) states:

> "If a defendant is not admitted to bail and elects not to commence service of the sentence pending appeal, he shall be held in the custody at the institution designated in the judgment *without execution of sentence* * * *." (Emphasis added.)

Under this statute, Blake had as much opportunity to appeal and elect a stay of sentence before delivery as anyone. The power to stay execution of sentence pending appeal in no way depends upon the ability to obtain release upon security deposit according to the statute.

 Defendant's other constitutional arguments based on Blake's reformation are similarly flawed. Although we might agree with the defendant's contention that imprisonment of a man who has rehabilitated himself may violate Article I, Section 15 of the Oregon Constitution, and although we reaffirm our ruling in *Tuel v. Gladden,* 234 Or 1, 379 P2d 553 (1963), that permanent reformation should be followed by release from confinement, we conclude that the issue of reformation once service of sentence has begun is properly within the jurisdiction of the Board of Parole. See ORS 144.050 and *State v. Cannon, supra.* Defendant's argument that imprisoning a rehabilitated convict is cruel and unusual punishment for purposes of the Oregon and federal constitutions fails to acknowledge that the determination of rehabilitation is properly within the jurisdiction of the Board of Parole once sentence has been executed.

The division of authority between the Board of Parole and the circuit court allows any modification of sentence to be based upon long term and close observation of the convict's behavior. Defendant presents us with no justification for disturbing this division of authority.

 Finally, defendant's contention that the election of a stay of execution of sentence pending appeal should operate

retroactively to avoid the effect of any delivery to the Corrections Division would have as a consequence, if accepted, double jeopardy, i.e., because of the retroactive effect of the stay, the convict would have to face the possibility of repeating the time previously spent in prison pursuant to sentence if his or her appeal failed. The convict could thereby be punished twice for the same offense. It was the consideration of exactly such a possibility that was one of the rationales for the common law rule concerning the limits of the judges' sentencing power. *Ex parte Lange, supra.*

Peremptory writ to issue.