Submitted on record and briefs December 13, 2004, sentences vacated; remanded for resentencing; otherwise affirmed July 27, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## MATHEW JACOBS,
aka Mathew Raymond Jacobs,
aka John Carluck,
*Appellant.*

0012-39506; A118804

117 P3d 290

Erin G. Rohr filed the briefs for appellant. With her on the reply brief was Chilton, Ebbert & Rohr, LLC.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and David J. Amesbury, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction and sentence for two felony and two misdemeanor crimes. The sentence for one of the felonies—unlawful use of a weapon, ORS 166.220—included a durational departure to a prison term of 36 months, even though the trial court originally had announced that it was going to impose a sentence on that charge of 18 months, without a durational departure. Defendant argues that the sentence imposed in the written judgment is invalid because he was not present when it was pronounced, that the court lacked the authority to modify the proposed sentence because he had already begun serving it, and that the record does not support the departure factors. We vacate defendant's sentences and remand for resentencing.

A jury convicted defendant of four crimes—unlawful use of a weapon, forgery in the first degree (ORS 165.013), assault in the fourth degree (ORS 163.160), and menacing (ORS 163.190)—arising from his use of a switchblade knife to avoid a citizen's arrest after attempting to cash a forged check at a supermarket. At a sentencing hearing in September 2001, the court made an oral statement announcing its intended sentences. The court said that it would dispositionally depart upward on the unlawful use of a weapon charge based on what the court found to be "persistent involvement by the defendant in carrying a knife and brandishing it when he feels threatened." The result of that departure would be an 18-month prison sentence. On the forgery charge, the court said that it would dispositionally depart upward based on defendant's admitted repeated acts of forgery and sentence defendant to 180 days in prison. The court said that it would make the sentence on the forgery count consecutive to the unlawful use of a weapon count. On the assault in the fourth degree and menacing charges—both misdemeanors—the court said that it would sentence defendant to 12 months for each count. The misdemeanor sentences would be served consecutively to each other and the felony sentences.

After the court announced its intentions, defendant's counsel requested a continuance in order to submit a memorandum to the court on whether the court could impose the consecutive sentences that it intended to impose. The court continued the sentencing for 30 days to allow defendant to brief his objections to the sentence. The court also asked the state to "consider what other departure factors there might be that have been overlooked by the [c]ourt in this oral sentencing order" and to provide it with facts about charges against defendant in Nevada arising from a forgery incident there. The court closed the hearing by stating that it would "hold the final sentencing orders open because once I have signed the sentencing order, there will be a transport and this [c]ourt would lose jurisdiction."

After two continuances, the court heard sentencing arguments in December 2001. At the conclusion of arguments, the following colloquy occurred between the court and defendant's counsel:

"THE COURT:   The case is continued for one week for entry of an opinion and order on the sentence.

"[COUNSEL]:   Judge, is that going to require an appearance in a week?

"THE COURT:   No. That's to give you—

"[COUNSEL]:   I understand.

"THE COURT:   —a week's time."

In March 2002, the court signed its opinion and order on sentencing.[1] In that document, the court imposed not only a dispositional departure on the unlawful use of a weapon count but also imposed a durational departure and sentenced defendant to 36 months in prison. The sentences

---

[1] Between the hearing in December 2001 and the issuance of the sentencing order in March 2002, defendant filed three handwritten documents with the court, objecting to the terms of the sentence proposed in September. In one of those documents, styled "Defendant's Objection to Sentencing," defendant objected to the court's upward dispositional departures, arguing that he had a right to a jury trial on the facts supporting those departures. Among the authorities defendant cited to support his argument was *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). However, despite the fact that he appears to have preserved the argument, defendant does not renew his *Apprendi* argument on appeal, and we do not address the lawfulness of his sentence on that ground.

on the other three counts remained largely the same as those announced at the September sentencing hearing, the only difference being that the forgery sentence was to be served consecutively in part and concurrently in part with the unlawful use of a weapon sentence. Defendant was not present when the court took those actions.

In April 2002, defendant filed written objections to the written sentencing order, arguing that it was invalid because it had not been rendered in defendant's presence and it imposed a more severe sentence after defendant had raised lawful objections to an oral sentence. Over those objections, the court entered a judgment of conviction and sentence as determined in the March 2002 order.

On appeal, defendant makes three assignments of error. In his first assignment, he asserts that "[t]he court erred in modifying the original oral sentencing order and imposing a substantially different sentence without a hearing and without defendant present, and when defendant was held in the custody of the county jail without bail." To support that assignment, defendant makes two arguments. First, he asserts that the court's written sentencing order and subsequent judgment violated his statutory and constitutional right to be present when judgment is given. Second, he argues that he began serving his sentence immediately after the September hearing, thereby depriving the court of the authority to modify it after that date.

Defendant's second and third assignments of error are alternative arguments. First, he argues that, if we agree that the court erred by modifying the orally pronounced sentence, then we must consider whether the court erred in imposing an upward departure in that sentence. In the alternative, if we hold that the written sentence is valid, then we must consider whether the court erred in imposing an upward departure in that sentence. In both assignments, defendant's argument reduces to an assertion that the court erred in finding that defendant was persistently involved in carrying a knife and brandishing it when he feels threatened. Because of our resolution of the first assignment of error in defendant's favor, we need not address defendant's second and third assignments of error.

Thus, we begin and end with defendant's first assignment of error, reviewing for errors of law. *State v. DeCamp*, 158 Or App 238, 240, 973 P2d 922 (1999). The state maintains that defendant either waived or failed to preserve the argument that it was error for the court to impose sentence outside defendant's presence. The state frames defendant's counsel's inquiry about whether the court's December 2001 continuance for entry of an opinion and order on the sentence was "going to require an appearance in a week" as an intentional waiver of whatever right defendant had to be present when the court gave its judgment. The state argues further that, even if defendant did not waive his right to be present, he at least failed to preserve the argument by failing to argue to the court that his appearance was, in fact, required. Neither of the state's arguments is well taken.

■  As we will discuss in more detail below, "[a] defendant has a statutory right to be present at all stages of a trial, including sentencing * * *." *State v. Massie*, 188 Or App 41, 43, 69 P3d 1236 (2003). Regarding that right, we have explained that "a defendant is not required affirmatively to assert the right to be present to preserve it; rather, the state must demonstrate that defendant waived his right to be present * * *." *DeCamp*, 158 Or App at 241. As with other rights, a valid waiver of the right to be present at sentencing "requires the intentional relinquishment of a known right." *State v. Kesch*, 150 Or App 288, 291, 946 P2d 322 (1997).

■  The brief colloquy between the court and defense counsel at the close of the December 2001 sentencing hearing is insufficient to show that defendant intentionally relinquished his right to be present at sentencing. Defense counsel merely asked, "Judge, is that going to require an appearance in a week?" The most that can be said about the intent behind that inquiry is that defense counsel wanted to know whether the court was scheduling a hearing. Likewise, defense counsel's silence on the matter after the court's response cannot reasonably be construed as a waiver by defendant of his right to be present at sentencing. However they may be construed, defense counsel's question and silence to the court's response do not evince an intent to waive a known right.

■■ Furthermore, under these circumstances, defendant did not fail to preserve the issue raised in his first assignment of error. Again, in that assignment, defendant argues that the trial court erred by imposing a longer sentence by written order and judgment than that proposed orally in September. Defendant was not aware that the court was contemplating a longer sentence until the court issued its March 2002 opinion and order imposing a durational departure on the conviction for unlawful use of a weapon. As we explained in *DeCamp*, "[a] party cannot be required to raise an objection contemporaneously with a trial court's ruling or other action when the party was not on notice of the trial court's intended action and had no opportunity to be present when the trial court acted." 158 Or App at 241. Thus, defendant's first assignment of error is preserved, and we turn now to its merits.

The right to be present at sentencing has both statutory and constitutional sources. *DeCamp*, 158 Or App at 242. The statutory source is ORS 137.030(1), which provides that, "[f]or the purpose of giving judgment, if the conviction is for a felony, the defendant shall be personally present * * *." The constitutional sources for the right have been traced to Article I, section 11, of the Oregon Constitution, *DeAngelo v. Schiedler*, 306 Or 91, 94, 757 P2d 1355 (1988), and to the Fourteenth Amendment to the United States Constitution, *State v. Riley*, 195 Or App 377, 384, 97 P3d 1269, *rev pending* (2005).

As noted above, ORS 137.030 provides that a defendant who is convicted of a felony must be present when judgment is given. Citing that statute, the Supreme Court has stated that "[j]udgment in a criminal case must be pronounced in open court." *State v. Bonner*, 307 Or 598, 600, 771 P2d 272 (1989). Also in *Bonner*, the Supreme Court recognized that "[t]he judgment contains the sentence, if any." *Id.* at 601 (citing *former* ORS 137.010(5) (1987), *renumbered as* ORS 137.010(7) (1989)). Thus, the right conferred on a defendant by the statute includes the right to have his sentence pronounced in open court. That never occurred here.

Although defendant frames the question as whether the trial court could modify the sentence pronounced in

September, correctly understood, the trial court did not pronounce anything on that date. Instead, it *proposed* a sentence, *i.e.*, a starting point.

■ The trial court's statement of its intentions in September was followed immediately by defendant's request to argue the propriety of the sentences. In response to that request, the court continued the sentencing hearing. Given that sequence of events, it cannot be said that the court pronounced judgment and sentence at the September hearing. As a result, the court never pronounced judgment in defendant's presence. Neither ORS 137.030 nor the constitutional provisions that guarantee a defendant the right to be present are satisfied under circumstances such as these, where the court never told defendant, face to face, what sentence he was to serve. Thus, we conclude that the trial court erred by failing to impose the modified sentence in the presence of defendant.

The cases on which the state relies do not persuade us otherwise. Those cases address the question of which judgment controls when the terms of a written judgment vary from those of oral statements made by the court on the record. The rule to be drawn from the cases is that a written order controls over oral statements made by a court. *State v. Swain/Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974). The reason for that well-founded rule is that "[a] judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter." *Id.* Although the rule originated in *Swain/Goldsmith*, a case involving a written order suppressing evidence, it has been extended and applied in cases involving a written judgment that imposes a sentence that varies from the terms of an earlier oral sentence. *E.g., State v. Jackson*, 141 Or App 123, 126, 917 P2d 34 (1996). However, none of the cases cited by the state in which the rule has been applied to a sentencing order presented the question whether the issuance of the written sentence violated the defendant's right to be present at sentencing.[2]

---

[2] *See State v. Jackson*, 141 Or App at 126 (addressing whether a term of the defendant's probation was lawful, the court first determined that the terms of the

Thus, the rule derived from the cases that the state relies on does not resolve this case. The question is not whether the terms of the written judgment control defendant's sentence; instead, it is the validity of that judgment. As we explain further below, the trial court retained the authority to modify the proposed sentence based on, as pertinent here, valid departure factors supported by the evidence. That is, it had the authority to change its mind about the appropriate sentence. However, to exercise that authority, it had to pronounce the sentence in open court in defendant's presence. By failing to do that, the court violated defendant's right to be present when the court pronounced its judgment.

■        Having concluded that the court erred by failing to pronounce judgment in defendant's presence, we must address whether the error was harmless. The state argues that defendant cannot "identify any prejudice that resulted in his case or that might potentially result in a hypothetical case." We disagree.

We recognized in *DeCamp* that, when a court imposes a longer sentence than that imposed in the defendant's presence, unless the defendant is present, he has "no opportunity to exercise his right to be heard generally or to raise legal or other objections to the sentence * * *." *DeCamp*, 158 Or App at 242. In that case, we were concerned that the

written judgment controlled over oral statements made by the trial court); *State v. Rood*, 129 Or App 422, 425-26, 879 P2d 886 (1994) (concluding that term in written sentence extending the defendant's sentence to 18 months from the 60 days pronounced orally was a clerical error and therefore could be corrected by vacation of sentence and remand); *State v. Morgan*, 104 Or App 62, 64-65, 798 P2d 1113 (1990) (concluding that, although it appeared that the sentencing judge intended to place the defendant on probation, the written order made no mention of probation, and therefore the court's jurisdiction over the defendant had expired prior to the sentencing order being appealed); *State v. Prior*, 96 Or App 181, 184, 772 P2d 431, *rev den*, 308 Or 158 (1989) (addressing whether the defendant had been unlawfully sentenced as a dangerous offender, court first determined that written judgment imposing the challenged sentence controlled over oral statements of the trial court that the defendant was not being sentenced as a dangerous offender); *State v. Wetzel*, 94 Or App 426, 428, 765 P2d 835 (1988) (holding that terms of written judgment imposing sentence controlled over oral statements made by the sentencing court because it was clear that the court "misspoke"); *State v. Mossman*, 75 Or App 385, 389, 706 P2d 203 (1985) (holding that original written judgments imposing sentences were not ambiguous and therefore judgments purporting to modify them based on oral statements made before their entry were invalid).

defendant had had no opportunity to argue to the court that it lacked the authority to modify his sentence because the sentence had been executed. *Id.* We stated, "Under those circumstances, the error cannot be said to be harmless." *Id.* (citing *DeAngelo*, 306 Or at 98).

Here, as in *DeCamp*, defendant argues that, because he was already serving an executed sentence, the court lacked authority to modify his sentence. As discussed below, defendant's argument on that point does not withstand scrutiny. Nonetheless, the mere fact that a defendant's statements regarding his sentence are likely not to affect the sentencing court does not itself render the defendant's absence harmless error. *DeCamp*, 158 Or App at 242. Regardless of whether defendant's argument that his sentence had been executed was correct, defendant had the right to make it. Furthermore, as *DeCamp* recognizes, defendants are not limited to making legal arguments in response to a sentence. Thus, defendant in this case was denied the opportunity to plead for leniency from the court based on any of his life experiences that may have militated against the durational departure or to make any other argument or statement about the sentence. Hence, we cannot conclude that the court's error in pronouncing its judgment without defendant being present was harmless.

Having concluded that the court's error was not harmless, as in *DeCamp*, "[t]he remaining question is one of remedy." *Id.* If defendant's argument that the September proposed sentence has been executed is correct, then we should remand with instructions to the trial court to enter a judgment reflecting the September proposed sentence. *See id.* at 245. On the other hand, if that sentence was not executed, then the court retained authority to modify it, and we must remand for resentencing. *See id.*

Defendant's argument on this point is that, because he would receive credit toward his prison sentence for the time that he served in the county jail during the sentencing proceeding, he in effect began serving his sentence after the September hearing. Defendant is wrong. Although a court may not modify a sentence that has been "executed," a prison sentence is not executed until the defendant is delivered to

the custody of the Department of Corrections (DOC). *DeCamp*, 158 Or App at 243 (citing *State ex rel O'Leary v. Jacobs*, 295 Or 632, 634-36, 669 P2d 1128 (1983)). Defendant was not transferred to the custody of DOC until after the trial court entered its judgment imposing the modified sentence. Thus, defendant's sentence had not been executed, and the trial court retained authority to modify the September proposed sentence.

Defendant relies on *State v. Perry*, 140 Or App 18, 914 P2d 29 (1996), to support his argument, but that case is distinguishable. In *Perry*, the defendant's original sentences were to be served concurrently, whereas the challenged modification dubbed the sentences consecutive. The defendant's sentences consisted of a 45-day jail term and a prison term of six months. We noted that it was "clear from the record in [the] case that, following the [original] sentencing proceeding, defendant was sent to the county jail for the purpose of serving his 45-day jail term." *Id.* at 22. Thus, we held that,

> "when defendant was incarcerated in the county jail before the issuance of the trial court's written judgment that made the prison sentence consecutive, the sentences were concurrent and both were 'put into effect' when he began his term in the county jail. Therefore, the trial court lacked authority to subsequently modify the prison sentence."

*Id.* at 23.

Whereas the sentences imposed on the defendant in *Perry* were initially concurrent, here, defendant's sentences were always intended to be consecutive. As we explained in *State v. Lebeck*, 171 Or App 581, 588, 17 P3d 504 (2000),

> "[i]n the context of consecutive prison sentences, * * * the determination of when the various sentences are deemed executed, for purposes of determining a trial court's authority to modify the sentence, is entirely dependent on when a defendant is delivered to the physical and legal custody of the proper authority, rather than whether a defendant is receiving credit for time in custody on a particular sentence. * * * That is so because the time at which a prison sentence is deemed executed is statutorily defined by reference to when a defendant is delivered to the custodial authority."

(Internal quotation marks omitted.) Regardless of the fact that defendant would ultimately receive credit for time served in the county jail, his sentence for unlawful use of a weapon was not executed until he was delivered to the custody of DOC. Thus, *Perry* is inapposite, and the trial court retained authority to modify the proposed sentence. Because defendant's sentence had not been executed, we remand this case to the trial court for resentencing.[3]

Sentences vacated; remanded for resentencing; otherwise affirmed.

---

[3] Defendant also argues that "the imposition of a harsher sentence following a lawful objection to an earlier sentence presents questions of retaliation." He asserts that his situation is analogous to that of a defendant who faces a harsher sentence after a successful appeal. We reject that argument without discussion.