Submitted on remand from the Oregon Supreme Court December 28, 2005, judgment in A116149 affirmed; money judgment in A117045 vacated and remanded; otherwise affirmed March 29, 2006

## RAYMOND FRANCIS ROY,
*Appellant,*

*v.*

## Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

00C20058; CA A116149 (Control)

## STATE ex rel
## RAYMOND FRANCIS ROY,
*Appellant,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
*Respondent.*

01C19972; CA A117045
(Cases Consolidated)

132 P3d 56

Raymond F. Roy, Jr., filed the briefs *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Erika L. Hadlock, Assistant Attorney General, filed the brief for respondents.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

These combined habeas corpus and mandamus actions are before us on remand from the Oregon Supreme Court. *Roy v. Palmateer*, 339 Or 533, 124 P3d 603 (2005). In our earlier decision, we concluded with respect to the habeas corpus proceeding that plaintiff was entitled to be released on parole on the date on which the Board of Parole and Post-Prison Supervision (board) found, under ORS 163.105(3) (1983), that he was "likely to be rehabilitated within a reasonable period of time." *Roy v. Palmateer*, 194 Or App 330, 332, 95 P3d 1124 (2004), *rev'd*, 339 Or 533, 124 P3d 603 (2005). We based that decision on the Supreme Court's opinion in *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001), in which the court in effect ordered the same disposition. We noted in our opinion that the court's disposition in *Norris* was "problematic," particularly in light of the wording of applicable statutes. *Roy*, 194 Or App at 339. We concluded, however, that we were bound by the court's decision. *Id.* at 339-40. We therefore reversed the judgment of the trial court in the habeas corpus proceeding.

The Supreme Court reversed our decision. The court concluded that we had erred when we relied too much on "a peculiar facet of the procedural posture in *Norris*" and not enough on the "plain directive of the statute." *Roy*, 339 Or at 543. According to the court, regardless of what it ordered in its prior decision, "*Norris* did not purport to establish any rule that a finding of likely rehabilitation required immediate release[,]" and we therefore had erred in holding that plaintiff was entitled to such release. *Id.*

Because our resolution of plaintiff's assignment of error based on ORS 163.105 (1983) had obviated the necessity of considering plaintiff's state and federal constitutional challenges in either the habeas corpus or the mandamus action, the Supreme Court remanded for us to consider those challenges. *Id.* For the reasons explained below, we now affirm the judgments of the trial court in both the habeas corpus and mandamus proceedings but, as in our earlier decision, again vacate and remand the money judgment in the latter proceeding.

We reiterate the following undisputed historical and procedural facts as stated in our first opinion:

"Plaintiff was convicted of aggravated murder, ORS 163.095(2) (1983), for a crime he committed in May 1984. He was sentenced to life in prison with a minimum of 20 years without possibility of parole. ORS 163.105(2) (1983). In December 1999, he requested that the Board of Parole and Post-Prison Supervision (board) hold a hearing for the purpose of determining whether he was 'likely to be rehabilitated within a reasonable period of time.' ORS 163.105(3) (1983). On February 15, 2000, after hearing evidence, the board determined that plaintiff met that standard and converted the terms of his confinement to life imprisonment with the possibility of parole. ORS 163.105(4) (1983). The board set a projected parole release date of May 18, 2004, and scheduled an exit interview for November 2003.

"In November 2000, plaintiff sought a writ of habeas corpus, asserting that, consistently with *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001), he was entitled to be released on parole as of February 15, 2000, the date on which the board found him capable of rehabilitation. The trial court issued the writ, the state filed a return, and plaintiff filed a replication. The state then moved to dismiss the writ. In September 2001, the trial court granted the motion on the ground that habeas corpus relief was not the appropriate remedy, and entered judgment dismissing the writ. In November 2001, plaintiff petitioned for an alternative writ of mandamus, again asserting that he was entitled to release on parole as of February 15, 2000; the trial court denied the petition.

"Plaintiff now appeals the judgments in both proceedings."

*Roy*, 194 Or App at 332-33 (footnote omitted).

As we noted in our earlier opinion, in his first assignment of error in this court, in addition to his statutory argument, plaintiff argued that the board's failure to release him after it found that he was likely to be rehabilitated violated the so-called Reformation Clause, Article I, section 15, of the Oregon Constitution; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and the proscriptions against "unnecessary rigor" and cruel and

unusual punishment in Article I, sections 13 and 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. Plaintiff acknowledged, however, that his challenges to the board's action as violating due process and the prohibitions against cruel and unusual punishment depended on the correctness of his argument under ORS 163.105(3) (1983) that he was entitled to immediate parole release. Because the Supreme Court has now rejected plaintiff's statutory argument, we do not consider his state and federal due process and cruel and unusual punishment challenges further.

■     We turn to plaintiff's challenge under Article I, section 15. At the time that plaintiff committed his crime, Article I, section 15, provided:

> "Laws for the punishment of crime shall be founded on the principles of reformation, and not vindictive justice."

In *Tuel v. Gladden*, 234 Or 1, 379 P2d 553 (1963), the Supreme Court explained that "reformation" means, in part, "correction" or "rectification" and that an "implied essential corollary of reformation" is that "permanent reformation should be followed by release from confinement." *Id.* at 5.[1] The court also explained, however, that, although it is not expressly recognized in the Oregon Constitution, the "protection and safety" of the people is also of "overriding importance." *Id.* at 6. The court concluded that, accordingly, in order to be consistent with Article I, section 15, sentencing statutes need not require that reformation "be sought at substantial risk to the people of the state." *Id.* Thus, although the offender in that case had been convicted of burglary and sentenced to life in prison under the Habitual Criminal Act, his sentence did not violate Article I, section 15, because the statute properly accounted for the "accepted fact" that a repeat offender was "more likely" to commit additional crimes upon

---

[1] The quoted version of Article I, section 15, was also the applicable version of that constitutional provision in *Tuel* and the other cases discussed herein. The current version of Article I, section 15, was referred to the people by the 1995 Legislative Assembly, was adopted, and became effective November 5, 1996. It provides that laws for the punishment of crimes be founded on the principles of "protection of society, personal responsibility, accountability for one's actions and reformation."

release; the life sentence therefore was justified by the "obligation to protect the people." *Id.* at 6-7.

The court applied the same principles to somewhat different facts in *State ex rel O'Leary v. Jacobs*, 295 Or 632, 669 P2d 1128 (1983). In that case, the offender had been sentenced to prison and then released pending appeal. After the exhaustion of his appeal rights, the trial court in effect modified his sentence to one of probation. *Id.* at 634-35. The Supreme Court determined that the trial court lacked authority to do so. The court explained that, although it "might agree" with the offender's argument that "imprisonment of a man who has rehabilitated himself may violate Article I, section 15," nevertheless, when the offender has been sentenced to prison and is subject to the jurisdiction of what was then the Board of Parole, "the issue of reformation * * * is properly within the jurisdiction of" the board. *Id.* at 638.

Finally, in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 612-13, 932 P2d 1145 (1997), the court applied the "rationale" of *Tuel* to the mandatory minimum sentences set out in ORS 137.700 (Measure 11). The court upheld the sentencing scheme, explaining that, under Article I, section 15, "the legislature is entitled to prescribe more serious penalties for crimes that present greater risks to the safety of the people of the state." *See also State v. Lawler*, 144 Or App 456, 466-69, 927 P2d 99 (1996), *rev den*, 326 Or 390 (1998) (although Article I, section 15, prohibits "retaliatory" sentencing schemes, it does not prohibit mandatory minimum sentences, such as those provided in ORS 137.700, that are "aimed at protecting the public").

■ We apply those principles here. Again, ORS 163.105(3) (1983) authorizes the board to determine whether an offender is "likely to be rehabilitated within a reasonable period of time"; that finding does not entitle the offender to immediate release, however. *Roy*, 339 Or at 543. Nevertheless, for the following reasons, the statute does not thereby violate Article I, section 15. First, the quoted determination is not the equivalent of a finding that the offender has achieved what the *Tuel* court identified as the relevant status, namely, "permanent reformation." Nor has the board

made the latter determination in regard to plaintiff in this case, a determination that, consistently with *O'Leary*, it properly is within the board's jurisdiction to make. Conversely, by providing that an offender as to whom such a determination has been made becomes subject to a life sentence with the *possibility* of parole, ORS 163.105(4) (1983) also properly accounts for the severity of the offender's crime—here, aggravated murder—and for the obligation to protect society—here, through the exercise of the board's discretion regarding a proper parole release date. Plaintiff's rights under *former* Article I, section 15, were not violated.

In his second assignment of error in this court, plaintiff argued that the trial court erred in dismissing his petition for an alternative writ of mandamus.[2] According to plaintiff, the trial court erred in determining that his allegations were "more the subject of a tort claim or a [civil rights] claim" and in determining that plaintiff had failed to demonstrate that the specific action he sought was compelled by any law, rule, or duty. The state conceded in this court that the trial court's first stated ground for dismissal was erroneous but argued that the error does not require reversal because, if the mandamus action were reinstated in the trial court, it would be subject to dismissal on the ground that plaintiff's habeas corpus action constituted "another action pending between the same parties for the same cause" as provided in ORCP 21 A.

We agree with the state that the trial court's error, if any, does not require reversal, albeit for the alternative reason stated by the trial court itself. Again, as discussed above, ORS 163.105(3) (1983) does not require the immediate release of an offender who the board has determined is "likely to be rehabilitated within a reasonable period of time." Accordingly, plaintiff's mandamus action against the board, which sought to compel such release, was unavailing. Thus, even assuming that the trial court erred in regard to the availability of a tort or civil rights remedy, the trial court correctly determined that the action that plaintiff sought to compel was not required by law.

---

[2] Although the Supreme Court noted that we did not previously reach plaintiff's second assignment of error, it did not expressly direct us to consider it on remand. *See Roy*, 339 Or at 536 n 4, 543. We nevertheless do so.

Finally, in his third assignment of error in this court, plaintiff argued that the trial court erred in entering a money judgment against him in the amount of the filing fee in the mandamus proceeding. The state conceded that error and, in our original opinion, we accepted its concession; we therefore vacated and remanded the money judgment in the mandamus proceeding. *Roy*, 194 Or App at 344. The Supreme Court did not separately address that aspect of our disposition. However, because that court reversed our decision without differentiation, we necessarily understand it to have done so in regard to the money judgment as well. For the reasons explained in our original opinion, we again vacate and remand the money judgment in the mandamus proceeding.

Judgment in A116149 affirmed. Money judgment in A117045 vacated and remanded; otherwise affirmed.