Argued and submitted October 3, affirmed November 13, 1996

# STATE OF OREGON,
## *Respondent,*

## *v.*

# BRIAN JOHN LAWLER,
## *Appellant.*

## (9505-33627; CA A90362)

927 P2d 99

Douglas E. Beloof argued the cause and filed the briefs for appellant.

Eleanor E. Wallace, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant is a minor who appeals from judgments of conviction for assault in the first degree, ORS 163.185, and assault in the third degree, ORS 163.165. Although he had no criminal history, he received a 90-month prison term on the first-degree assault conviction, pursuant to Ballot Measure 11, a voter initiative mandating minimum sentences for serious felonies against persons, including a requirement that 15- to 17-year-olds charged with those crimes be tried as adults. Or Laws 1995, ch 2, § 1(1) and (2). On appeal, he asserts that Measure 11 violates several provisions of the juvenile code and the Oregon Constitution.[1] We affirm.

Defendant was part of a group that attacked two men in a park near Mount Hood Community College on May 5, 1995. Defendant struck David Clarke in the back of the head with a baseball bat, causing extensive injuries, including a skull fracture and slight brain damage. Evan Gardner, the second victim, was also struck in head while trying to escape. He received three surgical stitches.

Defendant was soon arrested. Although 17 years old at the time, he was not charged in juvenile court, as required by ORS 419C.005.[2] Instead, he was among the first minors in the state charged directly in circuit court under Measure 11,[3] which provides, in part:

"Section 1. (1) When a person is convicted of one of the offenses listed in subsection (2) of this section and the

---

[1] This case represents the first of many Measure 11 challenges before this court. We confine our opinion to the arguments raised by this defendant.

[2] ORS 419C.005 grants the juvenile court exclusive jurisdiction in cases involving a minor's acts, which, if committed by an adult, would constitute a crime.

[3] Measure 11 was approved by voters in the November 1994 general election, and by its own terms became effective April 1, 1995. Or Laws 1995, ch 2, § 3. The legislature subsequently amended the initiative to clarify certain language and implement its provisions. Or Laws 1995, ch 421, § 1; ch 422, §§ 47-49 (codified at ORS 137.700 to 137.707). However, those amendments did not take effect until June 30, 1995. Or Laws 1995, ch 421, § 5; ch 422, § 146. Because defendant's conduct occurred in May 1995, he is subject to the initiative in its original form. See ORS 161.035(3); State v. Flowers, 136 Or App 555, 558, 902 P2d 624 (1995) (generally, criminal defendant is tried and punished under laws in effect at time offense was committed). Accordingly, we confine our analysis to the unamended, original version of Measure 11.

offense was committed on or after April 1, 1995, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection 2. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the sentence for any reason whatsoever under ORS 421.120, 421.121 or any other statute. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in Section 2. *Notwithstanding any other provision of law, when a person charged with any of the offenses listed in subsection 2 of this section is 15, 16 or 17-years of age, at the time the charges are filed, that person shall be tried as an adult.*

"(2)   The offenses to which subsection (1) of this section applies and the sentences are:

"* * * * *

"(d)   Assault in the first degree * * * 90 months

"(e)   Assault in the second degree * * * 70 months[.]" (Emphasis supplied.)

A grand jury indicted defendant for assault in the first degree on Clarke and assault in the second degree on Gardner. The second degree assault charge was later reduced to assault in the third degree, ORS 163.165, which is not a Measure 11 offense. On that charge, the state filed a delinquency petition in juvenile court, ORS 419C.250 *et seq*, and defendant was remanded back to circuit court to be tried as an adult, pursuant to ORS 419C.340 *et seq*.

Before trial, defendant moved to dismiss the indictment on the first degree assault charge, challenging Measure 11 on statutory and constitutional grounds. The trial court denied the motion and found defendant guilty of both counts in a stipulated facts trial. Although defendant has no criminal history, he received a mandatory minimum sentence of 90 months in prison for first-degree assault, pursuant to Measure 11. Or Laws 1995, ch 2, § 1(2)(d). On his conviction for third-degree assault, he received 14 months, pursuant to the sentencing guidelines.

On appeal, defendant challenges only his conviction for first-degree assault, raising the same statutory and constitutional arguments he made at trial. We first address defendant's statutory claims. *State v. Rodriguez*, 317 Or 27, 31, 854 P2d 399 (1993) (cases are to be decided, if possible, on nonconstitutional grounds before reaching constitutional issues).

Defendant first argues that the circuit court lacked jurisdiction over the first-degree assault charge because defendant was a minor and the state did not follow juvenile code procedures. ORS 419C.005 grants the juvenile court exclusive jurisdiction over cases involving a minor's acts that, if committed by an adult, would constitute a crime. A minor under the juvenile court's jurisdiction generally must be "waived" or "remanded" into adult court pursuant to the procedures in ORS 419C.340 *et seq*. Measure 11, however, provides, in part:

"Notwithstanding any other provision of law, when a person charged with any of the offenses listed in subsection 2 of this section is 15, 16 or 17-years of age, at the time the charges are filed, that person *shall be tried as an adult*." (Emphasis supplied.)

Defendant contends that Measure 11 did not alter the provisions relating to juvenile jurisdiction and remand in ORS chapter 419C.[4] At most, he argues, it only required *trial* in adult court, with the juvenile court retaining jurisdiction for all other purposes, including disposition and sentencing. Defendant asserts that Measure 11 does no more than provide juveniles the right to a jury trial when charged with a Measure 11 offense, superseding the Supreme Court's holding in *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 575, 857 P2d 560 (1993) (delinquency proceedings are not criminal prosecutions and thus are not subject to the right to a jury trial). The text of Measure 11, he argues, nowhere explicitly requires that juveniles convicted of the listed crimes be *sentenced* as adults. As such, defendant contends, the circuit court lacked jurisdiction to try defendant on the first-degree

---

[4] Defendant argues that the state was therefore required to file a delinquency petition in juvenile court and move for his remand to adult court, as it did with the third-degree assault charge.

assault charge, as well as the authority to impose a mandatory minimum sentence.

■■ Defendant's argument presents an issue of statutory interpretation, which we review as a question of law. In construing a statute, we seek to discern legislative intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The Supreme Court's methodology for construing statutes in *PGE* applies to laws approved by voters through initiative or referendum. 317 Or at 612 n 4; *State v. Shumway*, 291 Or 153, 162, 630 P2d 796 (1981); *State v. Linn*, 131 Or App 487, 490, 885 P2d 721 (1994), *rev den* 320 Or 508 (1995). Our task here is to determine what the voters intended by the phrase "tried as an adult."

■ At the first level of analysis, we examine the initiative's text and context. If voter intent is clear at this level, our inquiry ends. *PGE*, 317 Or at 610-11. If, and only if, intent remains unclear do we proceed to the next level and examine the initiative's history. *Id.* at 611-12. In examining the text of Measure 11, we apply rules of construction bearing directly on how to read that text. *Id.* at 611. One such rule is that words of common usage should be given their plain, natural and ordinary meaning. *Id.* Doing so here, we conclude that the phrase "tried as an *adult*" does not mean filing a delinquency petition in juvenile court and moving for remand to adult court, as defendant contends. Adults accused of crimes are never placed under a juvenile court's jurisdiction, and an adult criminal prosecution is not initiated by filing a delinquency petition. Because all of the offenses listed in Measure 11 are felonies, Or Laws 1995, ch 2, § 1(2), circuit courts have exclusive jurisdiction to try adults charged with those crimes. Or Const, Art VII, § 9.[5]

We disagree with defendant's assertion that Measure 11 does not affect the remand procedures of ORS 419C.340 *et seq*. ORS 419C.340 provides that a juvenile court "*may* waive the youth to the appropriate court handling criminal actions" when certain circumstances are present. Measure 11, however, provides that "[n]otwithstanding any other

---

[5] *See also State v. Rudder*, 133 Or App 174, 178, 889 P2d 1367 (circuit court is the court of general jurisdiction), *adhered to as modified* 137 Or App 43, 903 P2d 393 (1995), *rev allowed* 322 Or 489 (1996).

provision of law," a minor charged with the listed crimes *"shall* be tried as an adult." The use of mandatory language indicates an intent to eliminate juvenile court discretion whenever a minor is 15 to 17 years of age and charged with a Measure 11 offense.

■ We also reject defendant's contention that Measure 11 does not subject him to the mandatory minimum sentencing scheme in subsection (2).[6] Although the text of the initiative does not address this point, we find the context instructive. *See PGE*, 317 Or at 610-11 (both text and context considered at first level of analysis). Context includes "other provisions of the same statute[.]" *Id.* at 611. First, it is significant that Measure 11's juvenile provision was made part of the same subsection establishing mandatory minimum sentences for adult offenders. Furthermore, the class of juveniles slated for adult trials is defined, in part, by reference to crimes carrying those very sentences. By lumping adults and juveniles together in the same subsection, Measure 11's backers intended to treat them as a single class of offenders. We can conceive of no reason why voters would force minors accused of serious person felonies into adult court but would not subject them to the mandatory adult sentences attached to those crimes. We conclude that, in passing Measure 11, voters intended to remove the defined class of minors from the juvenile court system, place them under the jurisdiction of the circuit court and subject them to the mandatory minimum sentences applicable to adults.

Such an interpretation, defendant argues, amounts to an implied amendment of the remand statutes, ORS 419C.340 *et seq*, and an implied repeal of the prohibition against imposing mandatory minimum sentences on juvenile offenders, ORS 161.620.[7] Because such legislative action is

---

[6] Defendant contends that the word "trial" connotes a discrete part of a criminal action. Citing ORS 131.005(12) and *State v. Baxley*, 27 Or App 73, 555 P2d 782 (1976), he appears to argue that a "trial" involves the guilt-phase of a case, not the disposition or sentencing. Those authorities do not support defendant's position. In *Baxley*, we held that a trial is "a proceeding *disposing* of a criminal action based on an accusatory instrument." 27 Or App at 77 (emphasis supplied). We based that statement on ORS 131.005(12), which defines a "trial court," in part, as a court with the "authority to accept a plea * * * or try, hear or otherwise *dispose* of a criminal action[.]" (Emphasis supplied.) Contrary to defendant's assertion, a "trial" includes more than the determination of guilt; it also encompasses disposition.

[7] At the time of defendant's crimes, ORS 161.620 provided, in part:

disfavored, he contends, we should reject that interpretation.[8]

■     "Amendment by implication is not favored but 'is recognized when the matter is clear.' " *Balzer Mch. v. Klineline Sand & Grav.*, 271 Or 596, 601, 533 P2d 321 (1975), *quoting State v. Scott*, 237 Or 390, 397, 390 P2d 328 (1964). In *Balzer*, the Supreme Court found a clear implied amendment where the statute at issue conflicted with an earlier statute on the same subject. The court held that the "two statutes are inconsistent and, therefore, the later will prevail." 271 Or at 601.

■     Here, Measure 11 is clearly inconsistent with both the remand provisions of ORS 419C.340 *et seq*, and the prohibition on mandatory minimum sentences in ORS 161.620, at least with respect to juveniles 15 to 17 years of age who are charged with the listed offenses. As discussed above, ORS 419C.340 *allows* the juvenile court discretion to remand, while Measure 11 *requires* adult trials for all juveniles in the defined class. Also, where ORS 161.620 generally *prohibits* the "imposition of any mandatory minimum sentence" in remand cases, Measure 11 *requires* it. Also, Measure 11's juvenile provision is prefaced by the phrase "[n]otwithstanding any other provision of law," making it clear that it was intended to supersede prior inconsistent legislation. We hold, as in *Balzer*, that, to the extent that Measure 11 is inconsistent with ORS 419C.340 *et seq* and ORS 161.620, it prevails over both.[9]

---

"Notwithstanding any other provision of law, a sentence imposed upon any person waived from the juvenile court under ORS 419C.349, 419C.352, 419C.364 or 419C.370 shall not include * * * imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105(1)(c) [aggravated murder] shall be imposed where the person was 17 years of age at the time of the offense."

[8] Defendant invokes the "rule of lenity," arguing that ambiguities in the criminal law should be resolved in favor of the accused. As discussed below, we find no ambiguity here.

[9] We disagree with defendant that voters must *explicitly* repeal these statutes before juveniles can be tried in adult court and subjected to mandatory minimum sentences. Defendant cites no authority for such a sweeping conclusion, and we are aware of none. We also disagree that Measure 11 effectively *repeals* either of these statutory schemes; both remain viable and apply to juveniles younger than 15, as well as those charged with non-Measure 11 crimes.

We next address defendant's constitutional claims. Defendant first argues that Measure 11 violates the "single subject" rule of Article IV, section 1(2)(d), of the Oregon Constitution. Article IV, section 1(2)(d), provides:

> "An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

By purporting to address both adult and juvenile offenders, defendant asserts, Measure 11 unconstitutionally embraces multiple subjects.[10]

■ In assessing "single subject" challenges to initiative petitions, we first determine whether the measure embraces more than one subject. If it does, it violates Article IV, section 1(2)(d), regardless of whether the subjects are "properly connected." If it does not, and we can identify that subject, we need not inquire into proper connection as long as the measure embraces no other matters. If, however, other matters are addressed, then, and only then, must we determine whether they are properly connected with the subject. *OEA v. Phillips*, 302 Or 87, 100, 727 P2d 602 (1986).

Article IV, section 1(2)(d), is similar to Article IV, section 20, the "single subject" rule applicable to legislative enactments. Article IV, section 20, provides, in part:

> "Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."

In *Phillips*, the Supreme Court concluded that the texts of section 1(2)(d) and section 20 should not be interpreted to have different meanings. 302 Or at 100.

---

[10] Based on his statutory claims, defendant erroneously characterizes those subjects as (1) mandatory minimum sentences for certain crimes and (2) the right to a jury trial for juveniles charged with those crimes. However, as discussed above, the phrase "tried as an adult" encompasses more than the right to a jury trial. Properly phrased, the issue is whether Measure 11 embraces multiple subjects by (1) establishing mandatory minimum sentences for certain crimes and (2) requiring trial and sentencing in adult court for juveniles 15 to 17 years of age who are charged with those crimes.

■ Article IV, section 20, was intended to prevent "log rolling"—the practice of inserting unrelated matters into a single bill to force legislators favoring one matter to vote for another. *Lovejoy v. Portland*, 95 Or 459, 465, 188 P 207 (1920). Accordingly, section 20 should be "reasonably and liberally construed" to sustain legislation not in violation of the targeted abuse. *Phillips*, 302 Or at 95, *quoting Lovejoy*, 95 Or at 466. Because section 1(2)(d) is aimed at preventing the same harm, *Lowe v. Keisling*, 130 Or App 1, 8-9, 882 P2d 91 (1994), *rev dismissed* 320 Or 570 (1995), we also grant it a "reasonable and liberal" construction.

In *Lowe*, we held that a proposed voter initiative did not violate the single subject rule of Article IV, section 1(2)(d), even though it purported to address a wide range of subjects. That measure prohibited the government from (1) creating classifications based on homosexuality, (2) granting spousal benefits or marital status to homosexuals, (3) spending public funds to promote or express approval of homosexuality, (4) advising or teaching children, students or employees that homosexuality is a classification similar to race, religion, gender, age or national origin, and (5) granting minors access to library books addressing homosexuality. 130 Or App at 9.

We upheld the measure as embracing a single subject—*i.e.*, defining limitations on how Oregon governments could treat homosexuals and the subject of homosexuality. *Id.* at 10. Provisions dealing with public funds, minors' access to library books and public employment were not different subjects, but rather "a means of implementing the measure's general policy of prohibiting government from approving homosexuality." *Id.*; *see also State v. Shaw*, 22 Or 287, 288, 29 P 1028 (1892) (single subject rule is not intended to prevent legislation containing "such means as are reasonably adapted to secure the object" of the law).

■ Here, applying a "reasonable and liberal construction," we conclude that Measure 11 embraces a single subject—the disposition of offenders convicted of certain serious crimes. Including juveniles charged with those crimes in that class of offenders and requiring that they be tried in adult court does not constitute a separate subject. As in *Lowe*, this

is merely "a means of implementing the measure's general policy" of attaching stiffer, mandatory sentences to the commission of serious person felonies. To the extent that it may involve other matters, those other matters are properly connected with the measure's subject. Measure 11 does not violate Article IV, section 1(2)(d). *Phillips*, 302 Or at 100. The trial court was correct in so ruling.

Defendant next argues that Measure 11's mandatory minimum sentencing provision violates the "reformation clause" of the Oregon Constitution. By mandating a minimum sentence without allowing consideration of an offender's individual circumstances, defendant contends, Measure 11 forecloses the possibility of reform.

Article I, section 15, provides:

> "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindicative justice."

That provision was adopted from a similar section of the Indiana Constitution. *State v. Finch*, 54 Or 482, 498, 103 P 505 (1909). Article I, section 18, of the Indiana Constitution, provides:

> "The penal code shall be founded on the principles of reformation, and not of vindictive justice."

In *Finch*, the Oregon Supreme Court held that Oregon's death penalty law did not violate Article I, section 15,[11] relying on a similar holding by the Indiana Supreme Court in *Driskill v. State*, 7 Ind 338 (1855). 54 Or at 498-99.

The *Driskill* court held that Indiana's death penalty statute was not "vindictive," in violation of the reformation clause of that state's constitution. The primary purpose of all punishment, the court reasoned, is the protection of society. Article I, section 18, therefore required that the penal code both protect society and incorporate a system of reform. Indiana's entire penal code was founded on principles of reformation. Simply because the death penalty law was the only

---

[11] Article I, section 40, of the Oregon Constitution, now exempts the death penalty from the reformation principles of Article I, section 15. *State v. Montez*, 309 Or 564, 606-07, 789 P2d 1352 (1990).

instance in which the protection of society outweighed the goal of reformation did not mean that it violated Article I, section 18. 7 Ind at 342-43.

Because Oregon's reformation clause was based on the Indiana provision, the drafters of the Oregon Constitution were presumed to have adopted the *Driskill* construction. *Finch*, 54 Or at 499. Accordingly, *Driskill*'s "dual purpose" analysis has become the basis for analyzing claims under Article I, section 15, of the Oregon Constitution.

In *Tuel v. Gladden*, 234 Or 1, 379 P2d 553 (1963), the Oregon Supreme Court cited *Driskill* in holding that a former habitual criminal law, which required life imprisonment on a defendant's third felony conviction, did not violate Article I, section 15. 234 Or at 6 n 2.

> "The Oregon Constitution does not attempt to state all of the principles to be followed by the legislature in enacting sentencing laws. * * * The drafters of the constitution * * * did not include the most important consideration of all, *the protection and safety of the people of the state*. Such a principle does not have to be expressed in the constitution as it is the reason for criminal law." *Id*. at 5-6 (emphasis supplied).

The court interpreted Article I, section 15,

> "to command and require that Oregon sentencing laws have as their object reformation and not retaliation, *but they do not require that reformation be sought at substantial risk to the people of the state." Id*. at 6 (emphasis supplied).

The habitual criminal statute was not necessarily retaliatory, the *Tuel* court held, because the legislature could have concluded that the odds of reforming a multiple repeat-offender were outweighed by the risk that he or she would continue to endanger the community upon release. 234 Or at 7. In other words, the "obligation to protect society overrides considerations of reformation when the criminal character of the individual demonstrates reformation is unlikely." *State v. Lippert*, 53 Or App 358, 362, 632 P2d 28, *rev den* 291 Or 893 (1981).

■ Although Article I, section 15, prohibits retaliatory sentencing schemes, it does not prohibit mandatory minimum sentences aimed at protecting the public. *Tuel*, 234 Or at 6-7; *Norris v. Cupp*, 67 Or App 393, 397, 678 P2d 756, *rev den* 297 Or 824 (1984); *Lippert*, 53 Or App at 362; *State v. Warner*, 52 Or App 987, 995-96, 630 P2d 385, *rev den* 291 Or 662 (1981).

In *Lippert*, we held that a mandatory minimum sentence for using a firearm while committing a felony, ORS 161.610, did not violate Article I, section 15, because it was concerned with public safety and deterrence, not retaliation. We reasoned that "[l]ogically, a person who commits a felony by the use of a firearm constitutes a greater danger to the community than does a criminal who is unarmed." 53 Or App at 362. *See also Warner*, 52 Or App at 995 (purpose of mandatory "gun minimum" sentence is to protect society; statute recognizes that person who uses a gun while committing a crime is more dangerous than one who does not).

In *Norris*, we held that the sentencing statute for aggravated murder, ORS 163.105, which authorized a life sentence with a mandatory 20-year minimum, also reflected a legislative concern for safety and deterrence, and therefore did not violate Article I, section 15. We reasoned that an individual who murders more than one person in a single criminal episode, as defendant had there, "may legitimately be considered more dangerous to the public." 67 Or App at 397.

Under *Norris*, *Lippert* and *Warner*, a mandatory minimum sentencing scheme is aimed at public safety, and not retaliation, if the targeted conduct legitimately may be considered more dangerous to the community than lesser crimes. *Norris*, 67 Or App at 397; *Lippert*, 53 Or App at 362; *Warner*, 52 Or App at 995; *see also State v. Oslund*, 71 Or App 701, 710, 693 P2d 1354 (holding that "murder for hire" may be so considered), *rev den* 299 Or 37 (1985). Implicit in that analysis is the notion that a criminal defendant who engages in such conduct is so dangerous that the odds of reformation are outweighed by the need to protect society. *Tuel*, 234 Or at 7; *Lippert*, 53 Or App at 362. Therefore, it is the nature of the conduct itself, and not necessarily the offender's individual

circumstances, that determines whether a sentencing statute is aimed at public safety or retaliation. As we stated in *Lippert*:

> "Article I, section 15, does not prevent the legislature from *classifying* certain criminal *conduct* as particularly dangerous and designating heavier penalties for that *class of conduct* to protect society and deter such conduct in the future." *Lippert*, 53 Or App at 361 (emphasis supplied).[12]

■ We see no reason why the voters, when acting as legislators, may not also designate heavier penalties for certain classes of dangerous criminal conduct. Accordingly, we reject defendant's contention that Measure 11 violates the reformation clause by foreclosing consideration of an offender's individual circumstances. *See also Norris*, 67 Or App at 397-98 ("Article I, section 15, does not require that a sentencing statute provide that all of the circumstances of the individual and the crime be taken into account").

As in *Norris, Lippert* and *Wagner*, a person who commits a Measure 11 offense—*i.e.*, a serious person felony—may legitimately be considered more dangerous to the community than a person who commits lesser offenses. We conclude that Measure 11's mandatory minimum sentencing scheme is concerned with public safety, not retaliation, and therefore does not run afoul of Article I, section 15.

■ Defendant lastly argues that Measure 11 violates the "proportionality clause" of the Oregon Constitution, which provides that "all penalties shall be proportioned to the offense." Or Const, Art I, § 16. A sentencing scheme is unconstitutionally disproportionate when, among other things, it authorizes a more serious sentence for a lesser-included offense than it does for the greater crime. *Shumway*, 291 Or at 164 (25 years for murder; only 15 or 20 years for aggravated murder); *Cannon v. Gladden*, 203 Or 629, 632-33, 281 P2d 233 (1955) (life imprisonment for assault with intent to

---

[12] We used this same rationale in holding that the sentencing guidelines are not "vindictive" simply because they were intended, in part, to provide punishment appropriate to the offense. *State v. Spinney*, 109 Or App 573, 577, 820 P2d 854 (1991), *rev dismissed* 313 Or 75 (1992).

commit rape; only 20 years for completed rape). Here, defendant argues that Measure 11, under certain circumstances, could subject a juvenile in the applicable age group to a greater sentence for murder than for aggravated murder.[13]

However, in his brief, defendant asserts that Measure 11 is unconstitutionally disproportionate "as applied to this defendant." Defendant was neither charged with nor convicted of murder. He was convicted of first-degree assault, which the state points out is not a lesser-included offense of any other crime. We conclude, therefore, that this is not the proper case to decide whether Measure 11 authorizes a disproportionate sentence for murder in violation of Article I, section 16.

Affirmed.

---

[13] Measure 11 mandates a 25-year minimum sentence for a juvenile between 15 and 17 years of age convicted of murder. Or Laws 1995, ch 2, § 1(2). Murder is a lesser-included offense of aggravated murder. *State v. Wille*, 317 Or 487, 494, 858 P2d 128 (1993). However, aggravated murder is not a Measure 11 offense. A juvenile in the same age group charged with aggravated murder would therefore be subject to the discretionary waiver provisions of the juvenile code. ORS 419C.340 *et seq*. Defendant contends that if such a juvenile is not remanded to adult court and is found to have committed acts constituting aggravated murder, the maximum disposition could not extend beyond the juvenile's 21st birthday. *See former* ORS 419C.501. That is a lower sentence, defendant contends, than one authorized for a juvenile in the same age group charged with the lesser-included offense of murder.