Argued and submitted December 22, 2009, affirmed July 28, petition for review
denied December 23, 2010 (349 Or 480)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JOSE LUIS GODINES,**
*Defendant-Appellant.*

Yamhill County Circuit Court
CR070291; A138290

236 P3d 824

Bronson D. James, Chief Deputy Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

## SERCOMBE, J.

Defendant appeals a judgment of conviction on two counts of first-degree sodomy (Counts 1 and 3), ORS 163.405; two counts of first-degree sexual abuse (Counts 2 and 4), ORS 163.427; and one count of coercion (Count 9), ORS 163.275. He assigns error only to the trial court's imposition of mandatory minimum sentences under ORS 137.700 (1997) (Measure 11) on Counts 1 through 4.[1] He does not challenge the lawfulness of his sentence on Count 9. Defendant, who was indicted when he was an adult, argues that the trial court did not have legal authority to impose mandatory minimum sentences under Measure 11 for criminal acts committed when he was a juvenile under 15 years of age. For the reasons that follow, we conclude that the alleged error is not preserved and is not apparent on the face of the record; accordingly, we affirm the judgment of the trial court.

We take the following relevant facts from the record. Ten days before defendant turned 21 years of age, he was indicted in adult court on 22 counts, including a variety of sexual offenses, coercion, and menacing. Before trial, the court dismissed Counts 15 through 22 and allowed the state to amend the indictment as to Counts 1 through 4 and Count 9. As amended, Counts 1 through 4 alleged that defendant committed the charged offenses while he was a juvenile 12 or 13 years of age.[2] Defendant waived his right to a jury trial,

---

[1] The provisions of Measure 11, which were initially adopted by the voters by initiative in 1994, are codified as ORS 137.700 to 137.707. *State v. Lawler*, 144 Or App 456, 458 n 3, 927 P2d 99 (1996), *rev den*, 326 Or 390 (1998). As explained later in this opinion, the judgment of conviction in this case provides that the offenses underlying Counts 1 through 4 occurred "on or about" the day after defendant turned 12 years of age in 1998. Thus, although the statutes have since been amended, all references herein to ORS 137.700 to 137.707 are to the 1997 version of those statutes.

[2] Specifically, Counts 1 through 4, as amended, alleged that defendant's criminal conduct occurred "on or between" the day after defendant turned 12 years of age in 1998 and 24 days before defendant turned 14 years of age in 2000. Count 9, as amended, alleged that defendant's criminal conduct occurred "on or between" the day after defendant turned 12 years of age in 1998 and 24 days before defendant turned 15 years of age in 2001. As explained in the state's motion to amend the indictment in this case, the state moved to amend Counts 1 through 4 and Count 9 so as to restrict the allegations therein to a period of time after defendant reached 12 years of age, thereby allowing him to be held criminally responsible for his conduct. *See* ORS 161.290(1) (1997) ("A person who is tried as an adult in a court of criminal jurisdiction is not criminally responsible for any conduct which occurred when the person was under 12 years of age.").

and the trial court found him guilty on Counts 1 through 4 and Count 9 and not guilty on the remaining counts.[3]

After rendering its verdict, the trial court and the parties discussed whether a presentence investigation report (PSI report) should be ordered in anticipation of sentencing. That discussion, which ultimately resulted in an order for a PSI report, was as follows:

"THE COURT:   Okay I think we're going to have to do a pre-sentence report, is that correct?

"[DEFENSE COUNSEL]:   Yes.

"THE COURT:   And I mean just in my mind I because just because I'm unfamiliar with the law on this, I mean we have if I had to make a decision, I would say this all happened when [defendant] was 14 years old, and the victim was whatever, and I mean I just don't know the significance of that actually, I mean the indictment, and so anyway I may—may be disclosed for late in sentencing, don't know, but I don't know if that's a defense or not. If he was 14 and committed these [prosecutor], what would have been the procedure to take him out of Juvenile Court?

"[DEFENSE COUNSEL]:   He's out of Juvenile Court now.

---

It was possible to indict defendant when he was over age 18 for committing first-degree sodomy and first-degree sexual abuse when he was under age 15 due to the lengthy statute of limitations applicable to the prosecution of certain felony sexual offenses. ORS 131.125(2) (1997) provided, in part:

"A prosecution for any of the following felonies may be commenced within six years after the commission of the crime or, *if the victim at the time of the crime was under 18 years of age, anytime before the victim attains 24 years of age or within six years after the offense is reported to a law enforcement agency or other governmental agency, whichever occurs first:*

"* * * * *

"(g)  Sodomy in the first degree * * *.

"* * * * *

"(k)  Sexual abuse in the first degree * * *."

(Emphasis added.) In this case, the victim, defendant's younger half-sister, did not report defendant's conduct until defendant was over age 18.

[3] Much like the amended indictment, the written verdict described the conduct in Counts 1 through 4 as occurring "between" the day after defendant turned 12 years of age in 1998 and 24 days before defendant turned 14 years of age in 2000.

"[PROSECUTOR]:    The problem is he's out of Juvenile Court now.

"THE COURT:    Okay, alright.

"[PROSECUTOR]:    You know and I think you know what happens obviously, well we'd have to go back—I think [Measure] 11 would have been in effect for the whole thing but—

"[DEFENSE COUNSEL]:    It's a good question.

"THE COURT:    So anyway there's that issue.

"[DEFENSE COUNSEL]:    I think we—I think we have a more than—more than commonly difficult sentencing issue going on.

"THE COURT:    Yeah, right, okay, well we'll deal with that at sometime in the future."

A PSI report was submitted to the trial court, and, at the sentencing hearing, the court imposed mandatory minimum sentences under ORS 137.700 (Measure 11) on Counts 1 through 4. The judgment of conviction from which defendant appeals indicates that the trial court structured defendant's sentences so that he would serve a total period of incarceration of 120 months.[4] In addition, the judgment provides that, for Counts 1 through 4, defendant committed the underlying offenses "on or about" the day after he turned 12 years of age in 1998.[5]

---

[4] Defendant received 100 months' incarceration on Count 1; 75 months' incarceration on Count 2, to be served concurrently with Count 1; 100 months' incarceration on Count 3, with 80 months to run concurrently and 20 months to run consecutively with Count 1; 75 months' incarceration on Count 4, to be served concurrently with all prior counts; and 31 months' incarceration on Count 9, to be served concurrently with all prior counts.

[5] Based on statements by the trial court when deciding whether to order a PSI report, both parties on appeal agree that the trial court found defendant to be 14 years of age at the time he committed the offenses described in Counts 1 through 4. We note, however, that the conduct charged in those counts was alleged to have occurred during a specified date range that did not include *any* period of time in which defendant would have been 14 years of age. Further, as we have just described, the judgment of conviction provides that the underlying offenses were committed "on or about" the day after defendant turned 12 years of age in 1998.

Ultimately, for our purposes in determining whether defendant's assigned error is apparent on the face of the record, it is irrelevant whether defendant was 14, as opposed to 12, at the time he committed the offenses. As we will describe in some detail later in this opinion, at the time defendant committed his offenses—

■ On appeal, defendant challenges the lawfulness of his sentences on Counts 1 through 4 and argues that the trial court did not have authority under the governing statutory scheme to impose Measure 11 sentences under ORS 137.700 for offenses he committed when he was under 15 years of age. Although defendant did not raise that argument to the trial court, he nonetheless urges that the alleged error is preserved because "all the parties were put on notice, by the trial court itself, that the applicability of a Measure 11 mandatory minimum [sentence] could be in question due to the defendant's age at the time of the crime commission."[6] Alternatively, defendant argues that the alleged error should be addressed as one apparent on the face of the record or, in other words, as plain error. *See* ORAP 5.45(1).[7] The state responds that the alleged error is not preserved and, further, that the alleged error is not plain.

■ Generally, we will not consider on appeal an issue not preserved before the trial court. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). To preserve a claim of error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Id.* at 343. Here, the record establishes only that, at the time the trial court ordered the PSI report to be prepared, it expressed a general uncertainty regarding its authority to sentence defendant and specifically stated that

---

whether in 1998 or 2000—persons who were at least 12 years of age but under 15 years of age at the time they committed their offenses were subject to the same statutory scheme regarding jurisdiction and sentencing. Therefore, for convenience, when discussing defendant's age later in this opinion, we refer to defendant as being convicted of offenses that he committed when he was under 15 years of age.

[6] Defendant also argues that the alleged error is reviewable as "fundamental error" that does not require a contemporaneous objection in the record. We reject that argument without discussion.

[7] ORAP 5.45(1) provides:

"A question or issue to be decided on appeal shall be raised in the form of an assignment of error, as prescribed in this rule. Assignments of error are required in all opening briefs of appellants and cross-appellants. No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

"we'll deal with that at sometime in the future." There is nothing in the record, either at the time the trial court ordered the PSI report or at a later proceeding, to demonstrate that defendant provided the trial court with *any* objection to the imposition of Measure 11 sentences, let alone an explanation of that objection. Thus, we conclude that the alleged error is unpreserved.

■ Nonetheless, defendant contends that we should review the alleged error as one apparent on the face of the record under ORAP 5.45(1). Error is apparent on the face of the record if (1) the error is one of law; (2) the error is "apparent," in that the "legal point is obvious, not reasonably in dispute"; and (3) the error appears "on the face of the record" so that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Further, even if an error is apparent on the face of the record, we must then determine whether to exercise our discretion to reach the error and correct it. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

As noted above, defendant alleges that the sentences imposed under ORS 137.700 on Counts 1 through 4 are unlawful under the governing statutory scheme, which included ORS 137.707 and ORS 161.620 (1997). At the time defendant committed Counts 1 through 4 (the offenses of first-degree sodomy, ORS 163.405, and first-degree sexual abuse, ORS 163.427), ORS 137.700 provided, in part:

"(1)  *When a person is convicted* of one of the offenses listed in subsection (2)(a) of this section, * * * the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection (2) of this section. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in, or based on, the minimum sentence for any reason whatsoever under ORS 421.121 or any other statute. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in subsection (2) of this section.

"(2)   The offenses to which subsection (1) of this section applies * * * are:

"* * * * *

"(L)   Sodomy in the first degree, as defined in ORS 163.405 * * *

"* * * * *

"(P)   Sexual abuse in the first degree, as defined in ORS 163.427[.]"

(Emphasis added.) ORS 137.700 applied to persons "convicted" of a Measure 11 offense by an adult court; those same sentences did not apply to persons "adjudicated" by a juvenile court to be within its jurisdiction. *See* ORS 419C.400(4) (1997) ("An adjudication by a juvenile court that a youth is within its jurisdiction is not a conviction of a crime or offense.").

■       ORS 137.707, however, provided, in part:

"(1)(a)   Notwithstanding any other provision of law, when a person charged with aggravated murder, as defined in ORS 163.095, or an offense listed in subsection (4)(a) of this section is *15, 16 or 17 years of age at the time the offense is committed*, and the offense is committed on or after April 1, 1995, * * * the person shall be prosecuted as an adult in criminal court.

"* * * * *

"(4)   The offenses to which this section applies * * * are:

"* * * * *

"(L)   Sodomy in the first degree, as defined in ORS 163.405 * * *

"* * * * *

"(P)   Sexual abuse in the first degree, as defined in ORS 163.427[.]"

(Emphasis added.) In addition, ORS 161.620 (1997) provided:

"Notwithstanding any other provision of law, a sentence imposed upon any person waived from the juvenile court under ORS 419C.349, 419C.352, 419C.364 or 419C.370

shall not include * * * imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105(1)(c) shall be imposed."

Defendant notes that the plain text of ORS 137.707 "did not mandate removal of 14-year-old defendants to adult criminal court and nothing in the text of the statute purports to overrule, or contradict, ORS 161.620." He then argues, "By virtue of the statutory scheme in place [at the time he committed his offenses], defendant could not receive a mandatory minimum sentence. The choice to prosecute defendant ten years later does not alter that fact." We understand defendant to contend, in essence, that the adult court was not authorized to sentence him under ORS 137.700 following his conviction because that statute's context provided an implicit exception for adults convicted of Measure 11 offenses committed when they were under 15 years of age.[8]

The state does not dispute that the alleged error is one of law. *See State v. Cook*, 108 Or App 576, 582, 816 P2d 697 (1991), *rev den*, 312 Or 588 (1992) ("If a sentencing court exceeds its statutory authority in imposing a specific sentence, that is an 'error of law[.]' "). The state, however, does disagree that the alleged error is "apparent" and argues, instead, that there was no error because the statutory text of ORS 137.700 "clearly mandates a minimum prison sentence for *any* person convicted of committing one of the enumerated offenses, regardless how old he or she was when the crime was committed." (Emphasis in original.) Alternatively, the

---

[8] Defendant also raises an argument under the *ex post facto* provisions of both the state and federal constitutions, contending that he is not subject to Measure 11 sentences because ORS 161.620 (1997) applied to him at the time he committed his offenses. We understand defendant to thus contend that, because ORS 161.620 (1997) would have barred the imposition of Measure 11 sentences had he been waived from juvenile court to adult court at a time contemporaneous to when he committed his offenses, he cannot be sentenced under Measure 11 in adult court due merely to a delay in the initiation of judicial proceedings against him, the effect of which was to place him within the original jurisdiction of the adult court.

"An *ex post facto* law is one that makes criminal an act that was lawful at the time it was committed, or a law that increases the punishment for a crime after the commission of the act for which punishment is imposed." *Byrnes v. Board of Parole*, 134 Or App 296, 299, 894 P2d 1252 (1995). This is not a case where the trial court is alleged to have imposed a sentence under a statutory provision enacted *after* defendant committed his offenses. Defendant's *ex post facto* argument is not well taken, and we do not consider it further.

state contends that, at best for defendant, the error is "reasonably in dispute" and so cannot be reviewed as plain error.

In deciding whether an alleged error is plain, we have noted before that

> "an uncomfortable tension sometimes exists between the principle that a reviewing court is not permitted to review the merits of an unpreserved claim * * * and the practical reality that a court may have to do so to assess whether the error is an obvious one and not reasonably in dispute. *See also State v. Oatney*, 335 Or 276, 294, 66 P3d 475 (2003) ('There is no reason to address the issue whether allowing the jury to decide [if an alleged error] is "error apparent on the face of the record" without first determining whether it was error at all.')."

*State v. Caldwell*, 187 Or App 720, 724 n 2, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004) (brackets in original). This case presents just such an instance in which we necessarily must examine the merits of defendant's alleged error for the *sole* purpose of determining whether that alleged error is an "obvious" one. Thus, the legal issue at this juncture reduces to whether, under the governing statutes, it is obvious that an adult, who is tried in adult court for offenses committed when he or she was under age 15, is *not* subject to the mandatory minimum sentences of ORS 137.700.

As an initial matter, we note that the governing statutory scheme in this case has two facets: jurisdiction *and* sentencing. The parties agree that the issue here is not one of jurisdiction—*i.e.*, whether the adult court, as opposed to the juvenile court, was the proper forum in which to prosecute and sentence defendant. We agree for the following reasons.

■ Under ORS 419C.005(1), the juvenile court has "exclusive original jurisdiction in any case involving a person who is under 18 years of age[.]" As we explained in *Delaney v. State of Oregon*, 58 Or App 442, 445, 648 P2d 1302 (1982):

> "[T]he jurisdiction of the juvenile court does not depend on the defendant's age at the time the criminal act was committed, but [on] his age at the time judicial proceedings were initiated. *State v. Richmond*, 31 Or App 553, 570 P2d 1014 (1977); *State v. Watchman*, 20 Or App 709, 533 P2d

361, *rev den* (1975). In those cases [where the defendants were subject to adult court jurisdiction], the defendants had not been charged until after reaching the age of 18, although the acts were committed when they were 17. The rule is different, however, where the delay in charging a defendant is intentional. In *State v. Scurlock*, 286 Or 277, 593 P2d 1159 (1979), the district attorney had intentionally delayed bringing charges until after the defendant's 18th birthday in order to avoid the jurisdiction of the juvenile court. The Supreme Court, relying on [*former*] ORS 419.573(1) [(1979), *repealed by* Or Laws 1993, ch 33, § 373], which provides that the jurisdiction of the juvenile court 'shall attach from the time the child is taken into custody,' held that the legislature intended that the juvenile court, not the district attorney, determine whether an individual should be retained under juvenile court jurisdiction or remanded to an adult court. It held that exclusive jurisdiction in that case lay in the juvenile court, because the defendant *would* have been taken into custody before reaching age 18 if the district attorney had acted in accordance with that policy. 286 Or at 281-83."[9]

(Emphasis in original.)

Here, defendant was over 18 years of age when he was indicted in adult court. Moreover, there is no evidence in the record that the state purposefully delayed prosecution in order to avoid the jurisdiction of the juvenile court. Thus, defendant was properly tried and sentenced in adult court.

■  The only issue in this case, then, is one of sentencing authority and, in particular, whether the trial court committed plain error when it imposed on defendant mandatory minimum sentences under Measure 11. Determining whether the trial court "obviously" was—or was not—authorized to impose sentences under ORS 137.700 in this case requires that we construe the governing statutory sentencing scheme under the appropriate methodology of *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994), and *PGE v. Bureau of Labor and*

---

[9] Currently, ORS 419C.094 provides, similar to the text of *former* ORS 419.573 (1979), that "the jurisdiction of the juvenile court of the county in which a youth is taken into custody * * * shall attach from the time the youth is taken into custody."

*Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). Our examination of the text, context, and legislative history of the governing statutes ultimately leads us to conclude that the alleged legal error is in reasonable dispute.

As noted above, Measure 11 was adopted by the voters by initiative in 1994. In furtherance of our goal to ascertain the voter's intent in adopting that measure, *see Ecumenical Ministries,* 318 Or at 559, it is helpful to describe the interrelationship between the jurisdictional and sentencing components of the juvenile justice system and the adult criminal system as they existed in 1994. At that time, ORS 419C.005(1) (1993)[10] and long-standing precedent established that the juvenile court had jurisdiction over a person *only* if that person was under age 18 when judicial proceedings were initiated. *See Delaney,* 58 Or App at 445; *Richmond,* 31 Or App at 556; *Watchman,* 20 Or App at 711. In *State ex rel Juv. Dept. v. Reynolds,* 317 Or 560, 574, 857 P2d 842 (1993), the Oregon Supreme Court explained:

> "[I]n the jurisdictional phase of a delinquency proceeding
> * * *, the issue is not whether the child should be punished
> for his or her conduct but, rather, whether the statutory
> grounds for jurisdiction have been established and, if so,
> what disposition is in the child's best interests. Juvenile
> courts are concerned with rehabilitation, not punishment.
> If the state wishes to prosecute a child criminally, it must
> do so by transferring the child to an adult criminal court."

Thus, if the person was subject to its jurisdiction, the juvenile court could either adjudicate the case and enter an appropriate order directing the disposition to be made, *see* ORS 419C.400 (1993);[11] ORS 419C.411

---

[10] ORS 419C.005(1) (1993) provided:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city."

[11] ORS 419C.400 (1993) provided:

"(1) The hearing shall be held by the court without a jury and may be continued from time to time.

"(2) The facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in ORS 419C.005, unless admitted, must be established beyond a reasonable doubt.

"(3) For the purposes of determining proper disposition of the child, testimony, reports or other material relating to the child's mental, physical and

(1993),[12] or, in certain circumstances, the juvenile court could waive the person to the appropriate adult criminal court, *see* ORS 419C.340 (1993).[13] If adjudicated by the juvenile court, the disposition ordered could include, among other options, diversion, probation, restitution, detention, fines, or community service. *See* ORS 419C.443 - 419C.462 (1993). If waived into adult court, however, the person was subject to adult prosecution and sentencing under the sentencing guidelines, *see* ORS 137.637 (1993);[14] however, the person generally was *not* subject to the imposition of mandatory minimum sentences, *see* ORS 161.620 (1993).[15]

If, on the other hand, a person was 18 years old or older when charged—*i.e.*, an adult and thus not subject to the jurisdiction of the juvenile court—that person was prosecuted in adult court, regardless of the person's age at the time the offenses were committed. No waiver from juvenile court was involved and, accordingly, the protection from mandatory

---

social history and prognosis may be received by the court without regard to their competency or relevancy under the rules of evidence.

"(4) An adjudication by a juvenile court that a child is within its jurisdiction is not a conviction of a crime or offense."

[12] ORS 419C.411 (1993) provided:

"At the termination of the hearing or hearings in the proceeding, the court shall enter an appropriate order directing the disposition to be made of the case."

[13] ORS 419C.340 (1993) provided:

"In the circumstances set forth in ORS 419C.349, 419C.352, 419C.364, 419C.367 and 419C.370, the court may waive the child to the appropriate court handling criminal actions, or to municipal court."

[14] ORS 137.637 (1993) provided:

"When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the presumptive sentence as provided by the rules of the State Sentencing Guidelines Board, whichever is longer."

[15] ORS 161.620 (1993) provided:

"Notwithstanding any other provision of law, a sentence imposed upon any person waived from the juvenile court * * * shall not include * * * imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105(1)(c) shall be imposed where the person was 17 years of age at the time of the offense."

ORS 163.105(1)(c) (1993) provided that, when a defendant was sentenced to life imprisonment for aggravated murder, "the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

minimum sentences afforded by ORS 161.620 (1993) to juveniles waived from juvenile court was inapplicable. An adult prosecuted and convicted in adult court was subject to sentences imposed under the sentencing guidelines as well as any relevant mandatory minimum sentences. The defense of incapacity due to immaturity, however, was available to shield an adult prosecuted in adult court from responsibility for crimes committed when the person was "under 14 years of age."[16] *See* ORS 161.290 (1993).[17]

It was in the context of that jurisdictional and sentencing scheme that the voters adopted Measure 11 in 1994. The original text of Measure 11, as approved by the voters, provided, in part:

"Section 1. (1) *When a person is convicted* of one of the offenses listed in subsection (2) of this section and the offense was committed on or after April 1, 1995, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection 2. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the sentence for any reason whatsoever under ORS 421.120, 421.121 or any other statute. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in Section 2. *Notwithstanding any other provision of law, when a person charged with any of the offenses listed in subsection 2 of this section is 15, 16 or 17-years of age, at the time the charges are filed, that person shall be tried as an adult.*"

---

[16] The defense of incapacity due to immaturity found in ORS 161.290 (1993) was inapplicable in juvenile court proceedings. *See State ex rel Juv. Dept. v. Wicks*, 97 Or App 390, 394, 776 P2d 582 (1989) (discussing that, by its terms, "the statutory defense of incapacity due to immaturity [in ORS 161.290] is not available in a juvenile court proceeding").

[17] ORS 161.290 (1993) provided:

"(1) A person who is tried as an adult in a court of criminal jurisdiction is not criminally responsible for any conduct which occurred when the person was under 14 years of age.

"(2) Incapacity due to immaturity, as defined in subsection (1) of this section, is a defense."

Or Laws 1995, ch 2, § 1 (emphases added). *See also State v. Lawler*, 144 Or App 456, 458-59, 927 P2d 99 (1996), *rev den*, 326 Or 390 (1998) (quoting the original text of Measure 11). Thus, as approved by the voters, the mandatory minimum sentences of Measure 11 applied to persons "convicted" of a Measure 11 offense; persons "adjudicated" by a juvenile court to be within its jurisdiction did not fall under Measure 11. *See* ORS 419C.400(4) (1993) ("An adjudication by a juvenile court that a child is within its jurisdiction is not a conviction of a crime or offense."). In addition, the original text of Measure 11—which provided that a person who was 15, 16, or 17 years old at "the time the charges are filed" shall be "tried as an adult"—demonstrated the intent of the voters to eliminate juvenile court jurisdiction over 15, 16, and 17 year olds charged with a Measure 11 offense.

Notably, nothing in the original text of Measure 11 spoke to the circumstance of an adult charged in adult court for an offense committed when he or she was a juvenile. Accordingly, the original text of Measure 11, as approved by the voters, did not disturb the principle that an adult prosecuted and convicted in adult court was subject to sentences imposed under the sentencing guidelines as well as any relevant mandatory minimum sentences, regardless of whether the person committed the offense as a juvenile. However, because the incapacity due to immaturity defense of ORS 161.290 (1993) applied to conduct committed by a person "under 14 years of age," the voters who approved Measure 11 could not have believed, in *any* circumstance, that Measure 11 sentences could be imposed on persons who committed their offenses at age 12 or 13.

In 1995, the legislature, through Senate Bill (SB) 1 (1995), undertook a comprehensive overhaul of the juvenile justice system.[18] SB 1 amended the original text of Measure 11, *see* Or Laws 1995, ch 422, §§ 47, 49, and amended the incapacity due to immaturity defense of ORS 161.290, *see* Or Laws 1995, ch 422, § 58. As we discuss below, it is those

---

[18] As part of the comprehensive overhaul enacted by SB 1, the 1995 Legislative Assembly declared the purposes of Oregon's juvenile justice system (now codified as ORS 419C.001) and created the Oregon Youth Authority (now codified as ORS 420A.010). *See* Or Laws 1995, ch 422, §§ 1a, 2.

amendments by the legislature in 1995—which have been undisturbed in the years since they were made—that are the source of the reasonable dispute in this case.

As introduced, SB 1 divided the original text of Measure 11 into two separate sections. Section 53, duplicated the original text of Measure 11 that pertained to a person "convicted" of an enumerated offense and deleted the original text that pertained to a person aged 15, 16, or 17 at "the time the charges are filed." The original text of Measure 11 pertaining to 15, 16, and 17 year olds, instead, appeared as part of section 55. In addition, as introduced, section 84, amended ORS 419C.250 (pertaining to the petition alleging that a child was within the jurisdiction of the juvenile court) to include a new subsection providing, "The district attorney may not delay or prevent the filing of a petition under this section for the sole purpose of allowing the person to attain the age at which the person may be charged and prosecuted as an adult." In that regard, section 84 echoed the holding of *Scurlock* that, when the state delays prosecution of a defendant for the sole purpose of avoiding juvenile court jurisdiction, the defendant cannot initially be prosecuted as an adult in the adult court. *See* 286 Or at 281-83.

Sections 55 and 84 were subsequently amended by the Senate Committee on Judiciary, Subcommittee on Juvenile Justice. As described in the minutes of the subcommittee hearings, Bill Taylor, counsel for the committee, noted that Timothy M. Travis, an attorney with Juvenile Rights Project, Inc., had suggested an amendment to section 55 that would make the age of certain offenders at the time the offense took place the determinative factor as to whether Measure 11 applied. Following Taylor's remarks, Travis then proposed changing the phrase "charges are filed" in section 55 to "offenses are committed" and deleting from section 84 the new amendment to ORS 419C.250 because that text would be surplus and irrelevant. The subcommittee agreed by adopting those amendments to the bill. Minutes, Senate Committee on Judiciary, Subcommittee on Juvenile Justice, SB 1, Feb 20, 1995, 2.

Those amendments to SB 1 suggest at least two possible intentions by the legislature. The first supports defendant's position; the second supports the state. On the one

hand, the amendments suggest an attempt by the legislature to make the age of the person on the date the offense took place the determinative factor as to whether Measure 11 applied. On the other hand, those amendments suggest that the legislature was merely searching for text that would, in practical effect, duplicate the rule of *Scurlock* and remove from the discretion of the district attorney any choice between juvenile and adult court jurisdiction.

In addition to provisions regarding juveniles aged 15 to 17, the legislature also considered how to treat juveniles aged 12 to 14. For example, as introduced, section 56 provided that, when a person charged with one of five enumerated Measure 11 offenses is 14 years old at "the time the charges are filed," that person would be prosecuted as an adult and subjected to certain mandatory minimum sentences; section 85 amended the waiver provision of ORS 419C.352 to apply to juveniles alleged to have committed certain crimes under age "15," rather than under age "16"; and section 64 amended the incapacity due to immaturity defense of ORS 161.290 to limit the defense's applicability to conduct committed when under age "12," rather than when under age "14." The discussions before subcommittees of the Senate and House regarding those sections were varied,[19] and, as a result, the subcommittees made multiple amendments affecting those sections of the bill.[20]

---

[19] For example, we note that Travis testified in opposition to section 56. According to the minutes of the Senate subcommittee, Travis noted that (1) juveniles who are waived into adult court are not subject to Measure 11 penalties; (2) waiver is different than original jurisdiction in adult court; (3) Measure 11 put 15, 16, and 17 year olds into the original jurisdiction of the court; and (4) no one voted for juveniles 14 years old and under to get Measure 11 mandatory penalties. Minutes, Senate Committee on Judiciary, Subcommittee on Juvenile Justice, SB 1, Mar 6, 1995, 2-4. Travis's testimony, in some ways, foreshadows the arguments made by the defendant in this case—that Measure 11 does not apply to anyone under the age of 15 at the time the offense was committed.

[20] In particular, the Senate Committee on Judiciary, Subcommittee on Juvenile Justice, initially amended the bill to speak only to the impact of Measure 11, and thereby deleted all sections pertaining to 12 to 14 year olds. Minutes, Senate Committee on Judiciary, Subcommittee on Juvenile Justice, SB 1, Mar 8, 1995, 8-9. However, that subcommittee reversed course at its next meeting and acted to return to the bill the text of the previously deleted sections. Minutes, Senate Committee on Judiciary, Subcommittee on Juvenile Justice, SB 1, Mar 15, 1995, 2. Thereafter, the House Committee on Judiciary, Subcommittee on Juvenile Justice, amended the bill so as to delete the section applying Measure 11, in part, to juveniles aged 14. Minutes, House Committee on Judiciary, Subcommittee on Juvenile Justice, SB 1, May 4, 1995, 2.

Ultimately, the legislature did not act to extend any part of Measure 11 to juveniles aged 14. However, the legislature did amend ORS 419C.352, so as to apply that statute's waiver provision to juveniles alleged to have committed certain crimes under age 15. *See* Or Laws 1995, ch 422, § 78. The legislature also amended ORS 161.290, so as to limit the defense of incapacity due to immaturity to conduct committed when under age 12. *See* Or Laws 1995, ch 422, § 58. Importantly, all of those actions taken by the legislature addressed the treatment of juveniles under age 15 at the time of the offense; none addressed how an *adult* prosecuted in adult court, for offenses committed as a juvenile, was to be treated.

Thus, the above foray into the extensive history of Measure 11 and related provisions does little to make "obvious" the legislature's intent regarding Measure 11's application to adults prosecuted for offenses committed when they were juveniles. Considering all of the above, ORS 137.707 clearly embodied an exception to juvenile court jurisdiction, where, for certain persons aged 15, 16, or 17 at the time they commit their offense, juvenile court jurisdiction has been eliminated altogether. *See also State v. Pike*, 177 Or App 151, 155, 33 P3d 374 (2001), *rev den*, 333 Or 568 (2002) (holding that ORS 137.707 plays a limited role in the statutory scheme and "creates an exception for juveniles who, but for their age and charged offense, would otherwise be subject to the jurisdiction of the juvenile court"). So construed, the only inference to be readily drawn from the text of ORS 137.707 is that juvenile court jurisdiction had not been eliminated for persons under age 15 at the time they commit their offense. We cannot conclude, however, that the text of ORS 137.707 "obviously" implied that ORS 137.700 was inapplicable to persons who committed their offenses under age 15 but who were not prosecuted until after reaching age 18.

Defendant, nonetheless, also contends that, because ORS 161.620 applied to him at the time he committed his offenses, mandatory minimum sentences under ORS 137.700 cannot be imposed on him after his conviction. To recall, ORS 161.620 (1997) provided:

"Notwithstanding any other provision of law, a sentence imposed upon any person waived from the juvenile court under ORS 419C.349, 419C.352, 419C.364 or 419C.370 shall not include * * * imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105(1)(c) shall be imposed."

Under ORS 419C.352 (1997), for example, if certain conditions were met, "[t]he juvenile court[ ] * * * may waive a youth under 15 years of age at the time the act was committed to circuit court for prosecution as an adult[.]" Persons under age 15 who were waived from juvenile court and convicted of a Measure 11 offense by an adult court, therefore, were exempt from the mandatory minimum sentences of ORS 137.700 by virtue of the bar of ORS 161.620 (1997). No similar *explicit* exemption can be found in the governing statutory scheme for persons who committed their offenses under age 15 but who were properly convicted in adult court as adults because they were not charged until after they had reached the age of 18. Again, defendant's arguments, in essence, invite us to find an *implicit* exception of that nature. Unlike the plausibly ambiguous text of ORS 137.707, which may or may not allow for finding such an implicit exception, the text of ORS 161.620 (1997) clearly does not.

The issue defendant raises is a complex one of first impression. We cannot say, beyond dispute, that the trial court here was not authorized to impose mandatory minimum sentences under Measure 11 on defendant on Counts 1 through 4, which were committed when defendant was under 15 years of age. Indeed, at first blush, there are good arguments that there is no error to be found. However, because the contextual contention raised by defendant under ORS 137.707 is not completely implausible given that statute's text and history, we offer no opinion resolving the merits of the issue in dispute. Rather, we hold simply that the alleged error is not one apparent on the face of the record so as to fall within the scope of our discretionary review under ORAP 5.45(1).

Affirmed.